## SMITH *v.* STATE

[No. 131, September Term, 1964.]

*Decided March 3, 1965.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, HORNEY and SYBERT, JJ., and CARTER, J., Chief Judge of the Second Judicial Circuit, specially assigned.

*Morris Lee Kaplan,* with whom was *Michael Lee Kaplan* on the brief, for the appellant.

*David T. Mason, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Edward G. Wyatt, Assistant State's Attorney,* on the brief, for the appellee.

CARTER, J., by special assignment, delivered the opinion of the Court.

The defendant was convicted in the Criminal Court of Baltimore of obtaining money by false pretenses in violation of Article 27, Section 140, Code (1957), and sentenced to ten years in the Maryland Penitentiary. He appeals from that judgment.

It was established by the evidence that the victim, Mrs. Clifford Horsman, a widow of six months duration, placed an advertisement in The Sunday Sun, a Baltimore City newspaper, offering a room for rent to a gentleman. On the following Monday evening she received a telephone call from a man who identified himself as Thomas Frame inquiring if the room had been rented. The next morning the defendant appeared and identified himself as the person who had called. Mrs. Horsman requested his credentials and he informed her that after he arrived in Baltimore his wallet containing $1800 and his credentials was stolen. After renting the room, he departed. During his absence that day Mrs. Horsman received another telephone call from a purported Mr. Bell who advised her that Mr. Frame's bonus of $1800 would be delivered to him that day. When the defendant returned to the house he informed Mrs. Horsman that his check was being wired but that he needed money in the meantime to start his men on a construction job, whereupon she loaned him $400. Immediately thereafter, on the same day, he received another telephone call at Mrs. Horsman's home and informed her he needed $850 additional. She protested but agreed to let him have it until that afternoon. After this advance he again left Mrs. Horsman's home. While he was away he telephoned her, later that day, that he had to go to Hagerstown to get his trunk containing $18,000 in bonds, and explained that he had sold his home when his wife and child were killed in an airplane crash. He again contacted Mrs. Horsman early the next morning when he instructed her to call him at 8 A.M. as he was expecting a long distance call. The next morning a woman called at Mrs. Horsman's house inquiring for Mr. Thomas Frame and he answered the call. Thereafter, he informed Mrs. Horsman his big boss from Chicago had directed him, by wire, to go to the Lord Baltimore Hotel

before noon that day and meet a Mr. Wilson, who had some stock that his big boss wanted; that if he could get the stock he would be able to double his money and that he only wanted money for this purpose until noon. She then took him to the bank, withdrew $4,000 and delivered it to him. Neither his money nor luggage ever arrived and she never saw him thereafter until his arrest. No part of the money advanced has ever been returned. He testified that he had been engaged in the confidence game since 1957; that he was introduced to the game by one Danny Collins with whom he had since been associated; that Collins made the original telephone call to Mrs. Horsman and directed him to go to her home; that Collins further directed him to go back to her home after he had secured $1250, which he did and obtained $4,000 additional; that Collins' share of the deal was to be $3,000 and that, although he had sufficient monies from his race track winnings, a short time after the loan from Mrs. Horsman, to repay her in full as well as pay Collins his share he did not do so because he considered what he had won at the track his personal property. He further stated he entered into the Horsman deal to turn Collins over to the police and did not intend "to beat" Mrs. Horsman out of her money. Several clerks at the defendant's apartment house testified and none recalled any incoming calls received by him in support of his statement that he received many calls from Collins during his stay there from April 5, 1963 to May 17, 1963.

On May 2, 1963, Mrs. Horsman made a formal complaint concerning the incident to the Baltimore City Police Department. Based on her identifying description, the defendant was apprehended at his Baltimore apartment on May 17, 1963. When the police took him in custody, he gave his name as James Francis Bell and introduced his wife as Mrs. Bell. At the police station he first denied any knowledge of matters concerned in Mrs. Horsman's complaint and gave permission to search his apartment. In his apartment the police found lists of telephone numbers representing persons who had advertised rooms for rent. Opposite some of the numbers were placed the letters "N.G." which he explained meant no good, that is: that either a man answered the call or whoever answered did not sound like a good house. Also found in the apartment was an identi-

fication card in the name of James Frame and a social security card in the name of James Francis Smith.

The court in its instructions to the jury said in effect there were three elements which constituted the crime of obtaining money by false pretenses in violation of Section 140, Article 27, Code (1957), namely:—(1) false representation of a past or existing fact; (2) made with intent to defraud; and (3) that the victim actually relied on the false representations to her loss. He further stated that if the jury found these three elements to have been established beyond a reasonable doubt it was immaterial whether the money obtained was loaned, advanced as a speculation or otherwise transferred; that the statute made no mention of a loan although it does set forth that a *mere promise for future payment* not intended to be performed shall not be sufficient to authorize a conviction. The defendant excepted to that portion of the charge dealing with the matter of whether the statute included a loan transaction and contended that it was not so inclusive.

The defendant's motions for judgments of acquittal at the conclusion of the State's case and the whole case were denied. He contends the trial court committed reversible error:—(1) in denying his motions; (2) in allowing his verbal confession to be introduced in evidence over objection; and (3) in its instructions to the jury which in effect set forth that a loan was not excluded from the statute.

This Court set forth the elements necessary to establish guilt under the subject statute (Code (1957), Article 27, Section 140) in *Davis v. State*, 229 Md. 139, 141, where it said:

> "In order to convict an accused on the charge of obtaining money or property by false pretenses, the State must show that there was [1] a representation of a past or existing fact [2] made with intent to defraud, and [3] that the operation of such representation as a deception induced a transfer and the obtaining of the money or property by the person committing the fraud to the loss of another. *Marr v. State*, 227 Md. 510, 177 A. 2d 862; * * * *Willis v. State*, 205 Md. 118, 123, 106 A. 2d 85." (Numerals supplied.)

In respect to the first element it appears that the material representations of the defendant to Mrs. Horsman were:—(1) that he was engaged in the construction business and needed money to pay his men; (2) that he had his wallet stolen containing his credentials and $1800 soon after his arrival in Baltimore; (3) that he was to receive immediately a bonus of $1800; (4) that he had $18,000 in bonds in a chest in Hagerstown which represented the proceeds from the sale of his home; (5) that he had received a wire from his boss in Chicago suggesting that he buy certain stock from a Mr. Wilson within a few hours and that it presented an opportunity to double his money; and (6) that he was a widower without children. All of these representations were admitted by the defendant to be false. They all concerned past or existing facts and therefore constituted legally sufficient evidence upon which the jury could find the existence of the first essential element. In respect to the second element, that is, an intent on the part of the defendant to defraud the victim, the heretofore mentioned false representations when considered in the light of all the circumstances in this case appear to constitute an abundance of evidence from which the jury could find an intent on the part of the defendant to deceive and defraud Mrs. Horsman by persuading her to loan him money in reliance upon such false representations. We, therefore, find that the evidence was legally sufficient to warrant a finding of the second essential element. In respect to the third element, that is, that the false representations did in fact cause Mrs. Horsman to loan money to the defendant to her loss, we find the evidence likewise legally sufficient to support such a finding. The question presented is whether the victim actually relied on the truth of the representations in determining to make the loans which would not have been made but for, nor in the absence of, such reliance. See *Stansbury v. Fogle,* 37 Md. 369, 388; *Davis v. State, supra;* 2 Wharton, *Criminal Law and Procedure* (Anderson's Ed. 1957), § 600; 22 Am. Jur., *False Pretenses,* § 26. p. 458. When the nature and extent of the false representations aforementioned are considered in the light of the sequence of events and the surrounding circumstances, a sufficient factual basis exists for a reasonable inference that the victim in this case was in fact caused and in-

duced to make the loans by reason of her reliance upon such false representations and deception. In respect to the requirement that the false representations result in loss to the victim it is obvious from the conduct of the defendant that he never had any intention of repaying Mrs. Horsman and that she has sustained a loss of the entire amount loaned him. We do not here reach the question of the effect of restitution or intended repayment on this type of crime. For a discussion of this question see 2 Wharton, *Criminal Law and Procedure*, §§ 602, 609, 610. We hold therefore that there was legally sufficient evidence to support the jury's finding that all three of the elements essential to constitute the crime charged were established beyond a reasonable doubt.

The second contention of the defendant is that his oral confession should not have been admitted in evidence over his objection because the State failed to establish *prima facie* that it was his voluntary statement. The rule in respect to the admissibility of confessions in connection with the abandonment or promised abandonment of prosecution is set forth by Judge Horney in *Jones v. State,* 229 Md. 165. In dealing with a situation in that case where the defendant claimed his alleged confession was involuntary because prior to his statement, the police had threatened to charge his pregnant common law wife "with the gun", and had brought her to the police station and the police claimed they made him no promises nor threatened him to induce the confession, this Court found no reversible error in the admission of the confession. In so ruling, the Court said at p. 172:

> "Even if the defendant believed that his common law wife would not be held if he confessed, the confession was not thereby rendered involuntary or inadmissible merely because it was made to release another from suspicion of guilt: there must also be sufficient evidence that the confession was *actually induced by a threat or promise or other cause.* And in a majority of the cases in other states, as well as in this state, where it was claimed that a confession was inadmissible because it had been induced by a threat of ar-

rest or a promise of release of a relative of the accused, and the evidence was conflicting as to the making thereof, it has been held that whether a threat or promise was actually made presents a question of fact." (Emphasis supplied.) See also *Rogers v. State*, 89 Md. 424.

Concerning the extent of the burden which is upon the State to establish the voluntary character of a confession in order to accomplish its admission, this Court said in *Ralph v. State*, 226 Md. 480, 487:

"* * * the question of the admissibility of the confession was a mixed one of law and fact—the only duty of the trial court, having first considered the evidence produced on both sides, was to decide whether the *prima facie* proof was such as to establish that the confession was freely and voluntarily made, leaving * * * the ultimate determination of whether the confession was in fact voluntary and whether it should be believed to the * * * trier of the facts." See also *Hall v. State*, 223 Md. 158, 169 and *Smith v. State*, 189 Md. 596.

The evidence presented in respect to the question of the voluntary character of the confession in this case consisted of the testimony of the police to the effect that upon the defendant learning his wife was in custody he protested her innocence and refused to give a statement until she was released. That prior to this demand the police had determined to release her for lack of evidence and after the demand did bring her before the defendant and in his presence released her. After the release the defendant gave the police a verbal statement which was reduced to writing but which he refused to sign until he consulted counsel. The police further testified they did not promise the defendant to release his wife if he would make a statement nor threaten to keep her in custody if he did not do so, nor in any other manner threaten, coerce or make him any promises in order to induce him to make the statement but that it was his free and voluntary act. The defendant on the contrary tes-

tified the police did promise him to release his wife if he would give them a statement which promise of reward induced him to make the statement. The testimony of the police if believed by the trial court was sufficient evidence to establish *prima facie* that the confession was the free and voluntary act of the defendant. We hold, therefore, that there was sufficient evidence to support the trial court's ruling that a *prima facie* case of the voluntary character of the confession had been established so as to justify its admission in evidence for consideration by the jury.

The third contention is that a loan is not within the intended scope of the statute and therefore that the court's instruction setting forth that a loan could constitute the basis for the crime of false pretenses, if all other necessary elements are established, is in error. The statute provides in part:

> "Any person who shall by any false pretense obtain from any other person any chattel, money or * * * with intent to defraud any person of the same, shall be guilty of a misdemeanor, * * *."

This question is apparently one of first impression in this State although there appears to have been consistent interpretation of similar statutes in other jurisdictions. The general law on the subject is set forth in the text of 2 Wharton, *Criminal Law and Procedure* (Anderson's Ed. 1957), § 595, where it is stated:

> "The crime of obtaining money by false pretenses is committed by one who procures a loan of money by reason of fraudulent misrepresentations * * * concerning his occupation, * * * his interest in or ownership of the property, or his financial condition."

The same rule is also set forth in the text preceding the citation of numerous supporting cases in other jurisdictions in an annotation dealing with the subject in 24 A.L.R. 397. It is there set forth, in substance, that while the obtaining of a loan upon a representation to repay without any intent to do so will not, standing alone, be sufficient to constitute the crime of false pretenses where one obtains a loan by false representations relating to a past or existing fact he may be convicted

of such a crime. See also a supplemental annotation in 52 A.L.R. 1167. Based on these authorities and what appears to be the clear weight of authority as well as the obvious meaning of the wording of the statute which prohibits the *obtaining of money* by false pretense we hold that a transaction which involves the obtaining of money by a loan rather than by some other form of transaction and which results in the person making the false representations coming into the possession of the money or property of another by deception is within the intent, and indeed literally within the wording, of the statute provided the three essential elements aforesaid, are established.

*Judgment affirmed.*