**James Francis SMITH, #55797**

v.

**WARDEN, MARYLAND HOUSE OF CORRECTION.**

Civ. No. 16435.

United States District Court
D. Maryland.

Feb. 13, 1968.

James Francis Smith, pro se.

Francis B. Burch, Atty. Gen., of Maryland, and Henry J. Frankel, Asst. Atty. Gen., Baltimore, Md., for respondent.

THOMSEN, Chief Judge.

In June 1963 Smith was convicted in the Criminal Court of Baltimore of obtaining money by false pretenses and sentenced to ten years in the Maryland Penitentiary. That conviction was affirmed by the Maryland Court of Appeals in an opinion which sets out the facts of the case in detail. Smith v. State, 237 Md. 573, 576–578, 207 A.2d 493 (1965). Smith's first habeas corpus petition in this Court was filed in May 1965 and was denied as premature. In a second habeas corpus petition Smith presented only the question of the retroactivity of the Schowgurow case, (Schowgurow v. State, 240 Md. 121, 213 A.2d 475). Relief was denied. 248 F.Supp. 435 (D.Md.1965), affirmed, 362 F.2d 763 (4 Cir. 1966).

Smith had a full PCPA hearing on August 5, 1966, at which he was represented by counsel. Judge Harlan denied relief therein and leave to appeal was denied by the Court of Special Appeals on June 9, 1967. On October 9, 1967, Smith filed this petition for a writ of habeas corpus, raising several points.

1. Smith seeks relief on the ground that "a loan does not constitute false pretense", meaning apparently that the statute for the violation of which he was indicted does not include a loan obtained by false pretenses; and that the trial judge erroneously instructed the jury that they might convict defendant if they found that defendant obtained a loan of money from Mrs. Horsman by false pretense other than a false promise to repay.

The Maryland statute, Art. 27, sec. 140, provides in pertinent part:

"Any person who shall by any false pretense obtain from any other person any chattel, money or valuable security, with intent to defraud any person of the same, shall be guilty of

a misdemeanor, and being convicted thereof shall be liable, at the discretion of the court, to be punished by fine and imprisonment, or by confinement in the penitentiary for not less than two years nor more than ten years, as the court shall award; * * and provided also, that a mere promise for future payment, though not intended to be performed, shall not be sufficient to authorize a conviction under this section."

██ On the direct appeal defendant contended that the Court's instruction "that a loan could constitute the basis for the crime of false pretenses, if all other necessary elements are established", was in error. The Court of Appeals said:

"This question is apparently one of first impression in this State although there appears to have been consistent interpretation of similar statutes in other jurisdictions. The general law on the subject is set forth in the text of 2 Wharton, Criminal Law and Procedure (Anderson's Ed. 1957), § 595, where it is stated:

" 'The crime of obtaining money by false pretenses is committed by one who procures a loan of money by reason of fraudulent misrepresentations * * * concerning his occupation, * * * his interest in or ownership of the property, or his financial condition.'

"The same rule is also set forth in the text preceding the citation of numerous supporting cases in other jurisdictions in an annotation dealing with the subject in 24 A.L.R. 397. It is there set forth in substance, that while the obtaining of a loan upon a representation to repay without any intent to do so will not, standing alone, be sufficient to constitute the crime of false pretenses where one obtains a loan by false representations relating to a past or existing fact he may be convicted of such a crime. See also a supplemental annotation in 52 A.L.R. 1167. Based on these authorities and what appears to be the clear weight of authority as well as the obvious meaning of the wording of the statute which prohibits the *obtaining of money* by false pretense we hold that a transaction which involves the obtaining of money by a loan rather than by some other form of transaction and which results in the person making the false representations coming into the possession of the money or property of another by deception is within the intent, and indeed literally within the wording, of the statute provided the three essential elements aforesaid, are established." 237 Md. at 582–583, 207 A.2d at 497.

This interpretation of the statute violates no provision of the Federal Constitution.

2. Smith alleges that his lawyer did not advise him of his right to apply for a writ of certiorari to the Supreme Court of the United States after his direct appeal was denied. Smith makes no allegation of incompetency of counsel; in fact, he testified at his PCPA hearing that Clarence Darrow could not have done more for him than his court-appointed counsel did.

██ This Court is aware of no authority which holds that a defendant's constitutional rights have been infringed simply because his counsel has failed to advise him of his right to seek a writ of certiorari to the Supreme Court of the United States after his conviction has been affirmed by the highest court of a state. The duty of counsel to do so in federal prosecutions in this circuit is based upon the Plan of the Fourth Circuit adopted under the Criminal Justice Act of 1964, and not upon any constitutional provision, statute or general principle of criminal procedure.

██ Apart from a duty imposed by a Plan or Rule, a lawyer owes a duty to the court and to the orderly administration of justice not to recommend an application for certiorari to the Supreme Court of the United States when he does not believe that any serious constitutional question is involved. *Otherwise*, since in this circuit it is now the law that a

defendant cannot be sentenced to a more severe penalty on retrial than on his original trial, Patton v. State of North Carolina, 381 F.2d 636 (4 Cir. 1967),* every lawyer in every case in any state court as well as any federal court in this circuit would be obligated to advise his client of his right to file a petition for a writ of certiorari in every criminal case in which he represents an impecunious client, since his client would have nothing to lose by a frivolous application.

Indeed, it has been held by respectable authority that it is no violation of a constitutional right for a lawyer to fail to advise his client of his right to appeal or to enter a timely appeal. In United States ex rel. Mitchell v. Follette, 358 F.2d 922 (2 Cir. 1966), the Court, through Judge Friendly, said:

"We do not understand Mitchell to assert that the New York procedure was unconstitutional simply because it required timely filing of a notice of appeal without providing judicial advice as to the requirement or the assistance of counsel to effectuate the filing. No constitutional infirmity has been found in the federal procedure conditioning the requirement of advice by the judge and filing of notice by the clerk on the absence of counsel at the time of sentence, F.R. Crim.P. 37(a) (2); nor, in cases where a defendant was represented by counsel at the time of sentence but possibly not thereafter, has the Supreme Court intimated any constitutional objection to the mere failure to appoint counsel to perform the simple task of filing a notice of appeal on his behalf. See Coppedge v. United States, 369 U.S. 438, n. 5 at 442–443, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). We likewise do not understand Mitchell now to claim that failure of assigned counsel properly to advise him of his right to appeal would be attributable to the state. Occasional shortcomings of counsel are a danger confronting all, a point clearly recognized in Coppedge, 369 U.S. 443, n. 5, 82 S.Ct. 917, and

those able to retain counsel may forfeit the right to appeal through such oversight or ineptitude as fully as those who are not. See Berman v. United States, 378 U.S. 530, 84 S.Ct. 1895, 12 L.Ed.2d 1012 (1964); Peoples v. United States, 337 F.2d 91 (10 Cir. 1964), cert. denied 381 U.S. 916, 85 S.Ct. 1540, 14 L.Ed.2d 436 (1965)." 358 F.2d at 925–926.

The Federal Rule referred to by Judge Friendly has since been amended. See Rule 32(a) (2), as amended effective July 1, 1966, replacing the provision in Rule 37(a) (2).

Moreover, in the instant case it appears from the record that Smith *was* made aware of his right to apply for a writ of certiorari to the Supreme Court of the United States. The record in Smith's post conviction proceeding includes a letter from the Clerk of the Criminal Court of Baltimore acknowledging a letter from Smith stating his desire to appeal to the United States Supreme Court, sending Smith a copy of the rules and instructing him as to the proper procedures.

3. Smith alleges that he was denied a fair trial because an oral statement which he gave to the police, and which was introduced into evidence at the trial, had been obtained when he was without the advice of counsel and was the result of an inducement by the police. The trial was begun and completed in October 1963, before the decision in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (June 22, 1964), and before the decision in Miranda v. State of Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (June 13, 1966). See Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). On the original appeal in this case, the Court of Appeals of Maryland said:

"The evidence presented in respect to the question of the voluntary character of the confession in this case consisted of the testimony of the police to the ef-

* Cf. United States ex rel. Starner v. Russell, 378 F.2d 808 (3 Cir. 1967).

fect that upon the defendant learning his wife was in custody he protested her innocence and refused to give a statement until she was released. That prior to this demand the police had determined to release her for lack of evidence and after the demand did bring her before the defendant and in his presence released her. After the release the defendant gave the police a verbal statement which was reduced to writing but which he refused to sign until he consulted counsel. The police further testified they did not promise the defendant to release his wife if he would make a statement nor threaten to keep her in custody if he did not do so, nor in any other manner threaten, coerce or make him any promises in order to induce him to make the statement but that it was his free and voluntary act. The defendant on the contrary testified the police did promise him to release his wife if he would give them a statement which promise of reward induced him to make the statement. The testimony of the police if believed by the trial court was sufficient evidence to establish *prima facie* that the confession was the free and voluntary act of the defendant. We hold, therefore, that there was sufficient evidence to support the trial court's ruling that a *prima facie* case of the voluntary character of the confession had been established so as to justify its admission in evidence for consideration by the jury." 237 Md. at 581–582, 207 A.2d at 497.

■ The trial transcript supports the decision of the factual issue by the State Courts; none of the reasons for refusing to accept that conclusion are present. See 28 U.S.C.A. § 2254. The law applied by the State Courts does not violate any provision of the Federal Constitution.

At the PCPA proceeding Judge Harlan held that the matter had been fully litigated at the trial and on the original appeal. Petitioner contended that he had asked for a lawyer, but the evidence at the trial shows, as Judge Harlan pointed out, that petitioner did not ask for a lawyer until after he had made the oral statement.

■ 4. Smith alleges that there was an unnecessary delay at the station house before he was taken to or before a judicial officer. The first oral statement was made shortly after the arrest on Friday night; the other oral statements were made piecemeal on Saturday, within 24 hours. In view of this Court's acceptance of the State Courts' finding that the statements were voluntary and properly admitted, it does not appear that Smith was denied any constitutional right. See Sturgis v. Brough, Memorandum Decision No. 11,466 (4 Cir., January 25, 1968).

■ 5. Petitioner's final allegations are that he was subjected to unreasonable bail and an unreasonable sentence. The sentence was within the statutory maximum and not subject to review here. The question of the reasonableness of bail is now moot. Spriggs v. State of North Carolina, 243 F.Supp. 57, 61 M.D.N.C.1965).

The petition for a writ of habeas corpus must be and it is hereby denied.