## PATRICIA ANNETTE LOCKARD *v.* STATE OF MARYLAND

[No. 14, September Term, 1967.]

*Decided April 9, 1968.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*William F. Mosner* for appellant.

*Bernard L. Silbert, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Edward A. De-Waters, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Patricia Annette Lockard complains of a conviction of obtaining money by false pretenses in the Circuit Court for Baltimore County in a trial before Judge John E. Raine sitting without a jury. She alleges that the evidence was insufficient to support her conviction and that a five (5) year sentence was excessive.

There was evidence on which the trial judge could have found that: Patricia Annette Lockard was identified as the woman who had a chance meeting with a certain Margaret C. O'Grady in Dundalk on May 22, 1966, when the latter struck up a conversation with her concerning flowers; and in an ensuing conversation, Lockard stated that her husband had been recently killed in an automobile accident. Mrs. O'Grady inquired if there was enough insurance for the family's protection, and appellant told her that she had received $5,000 which she then had with her in her purse and was looking for a place to deposit it. Mrs. O'Grady could not give her any recommendation. The conversation continued and Lockard stated that she lived in Essex where a lady was then baby-sitting for her four-month-old child, and she then recounted a recent meeting with another woman who told her that she had found a package containing $600 and some betting slips. This woman did not know what

to do with the money, and Lockard said she told her to keep it.

After Lockard and Mrs. O'Grady conversed a while longer the lady who had allegedly found the $600 approached them and asked if Lockard had told anyone about the money. This third woman then joined the conversation and told the other two that she worked across the street for a lawyer and that she was going to ask him what to do about this found money. The third lady left the other two but returned a short while later telling them that, in addition to the $600, her "boss" had found two one-thousand dollar bills in the envelope, and that he told her that she should just keep the money. The third lady and her "boss" then decided it would be wise to give the other two ladies who knew of the incident the sum of $200 each to make sure they would keep quiet about it until "this thing blows over," but before giving each of them $200 the third lady's "boss" wanted to make sure that both Lockard and Mrs. O'Grady had enough money to live on for four or five months, so she asked if both of them could show her that they had $1,200 that she could show to her "boss."

Mrs. O'Grady "bit on it" and the third lady sent her and Lockard to Mrs. O'Grady's building and loan association where she was to withdraw the sum of $1,200 and bring it back with her. At the building and loan association Lockard represented herself "to be a friend of the family" and stated that the $1,200 was for an "emergency." This was done, and the two returned to find the third lady waiting, whereupon Mrs. O'Grady and Lockard both gave the third lady envelopes or packages purporting to contain their $1,200.

Mrs. O'Grady stated "* * * and I wasn't, thought I wasn't going to give it to her. Then she said, well this lady gave me hers. I had seen her give her a package of some kind and I thought having all that money with her she could give it to her, so, unfortunately, I left [sic] her have the envelope."

The third woman then took the envelopes across the street to show to her "boss," but returned shortly and said that his office was full of people so that she was not able to see him. She announced that she was going back and wait for him, and that the other two were to wait for her. After Lockard and

Mrs. O'Grady had waited for a length of time, Lockard stated that she had to phone her baby-sitter, and she left to make the call.

After waiting one hour, Mrs. O'Grady decided to look for the woman with the money, so she crossed the street to the office building which she had entered, but Mrs. O'Grady could not find the office or locate anyone in the hall. She came back across the street and immediately met a friend of hers who was the teller who worked at the building and loan association and who had given her the $1,200. When Mrs. O'Grady told her what had happened, this lady, a Mrs. Clark, looked for the lawyer or the third lady in the office building but found "nothing;" she then took Mrs. O'Grady to the police.

There was also evidence from which a trial judge could have found that Lockard gave Mrs. O'Grady the false name of "Sara Valenti;" that Lockard's husband had not been recently killed in an automobile accident and therefore she was not in possession of $5,000 insurance money; and further that she did not have a four-month-old child. Lockard was identified by both Mrs. O'Grady and Mrs. Clark. Mrs. O'Grady never saw either of the women again until after they were arrested.

In *Smith v. State,* 237 Md. 573, 207 A. 2d 493, 495 the Court of Appeals of Maryland stated that there were three elements which constituted the crime of obtaining money by false pretenses in violation of Section 140, Article 27 of the Md. Code namely "(1) false representation of a past or existing fact; (2) made with intent to defraud; and (3) that the victim actually relied on the false representations to her loss."

With respect to the first element, Lockard made the following false statements during the transaction: (1) that her name was Sara Valenti (2) that she lived in Essex (3) that her husband had recently been killed in an automobile accident (4) that she was carrying $5,000 of his insurance money in her purse (5) that she was a friend of the family and (6) that the $1,200 was for an "emergency." In respect to the second element of false pretenses, we think that under all of the circumstances of this case the foregoing false statements are sufficient for the trial judge to find an intent on the part of Lockard to defraud Mrs. O'Grady. With respect to the third element, the

testimony quoted above as to when Mrs. O'Grady stated that she parted with her money because she thought Lockard was also parting with hers, is sufficient to show the reliance on the representations. Lockard contends that Mrs. O'Grady was never asked if she got her money back. On the facts of this case it seems to us this question was superfluous. The trial judge stated, and we agree, "Well, it is completely uncontradicted that somebody practiced the old flimflam on the aged Mrs. O'-Grady, and the sole question here is one of identification." The trial judge relied on identification not only of Mrs. O'Grady but Mrs. Clark, and we cannot say that his finding was clearly erroneous. Maryland Rule 1086.

Lockard's second contention that the trial judge's sentence was dictated by passion, prejudice and ill will, or some other unworthy motive under *Gee v. State,* 2 Md. App. 61, 233 A. 2d 336, because he stated that he thought it was more reprehensible for flimflam parties to victimize the gullible and that although he did not think punishment in general deterred others, he thought that in this type of crime severe sentences would at least cause others not to practice it within the jurisdiction of the trial court. We think that these do not show that the trial judge was motivated by other than his sense of public duty. *Thomas v. State,* 2 Md. App. 645, 236 A. 2d 747. The sentence was within the statutory limits and is therefore not subject to review by this court. *Washington v. State,* 2 Md. App. 633, 236 A. 2d 32.

*Judgment affirmed.*