JOHN PRESTON SCOTT AND BETTY LEE
SCOTT *v.* STATE OF MARYLAND
[No. 264, September Term, 1967.]

*Decided July 2, 1968.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Sherman W. West* for appellants.

*Fred Oken, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Donald Needle, Assistant Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *James E. Kenkel, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

The appellants John Preston Scott and his wife Betty Lee Scott were convicted by a jury in the Circuit Court for Prince George's County under one indictment charging unlawful possession of explosives, six indictments charging receiving stolen goods over the value of $100.00, and six indictments charging receiving stolen goods under the value of $100.00. Each appellant was fined $100.00 for unlawfully possessing the explosives. John Scott was sentenced to the Maryland Penitentiary for a total of twenty-three years on the receiving convictions. Betty Lee Scott was sentenced to one year under each of the twelve

receiving convictions. Her sentence was then suspended and she was placed on probation for a period of three years. On this appeal from these judgments, the appellants advance twenty-seven reasons for reversal of their convictions, principal among which is that the court erred in failing to grant their pre-trial motion to quash a search warrant and suppress evidence seized by the police from their home and also in admitting such evidence at the trial over their objection.

The pertinent facts are these: On February 2, 1967 Detective Albert Kulle of the Prince George's County Police Department made application for a search warrant, alleging therein that there was probable cause to believe that there were stolen goods in appellants' home at 5303 Cable Avenue, Auth Village, Camp Springs, Maryland. Detective Kulle alleged in the application for the warrant that a Bell & Howell movie projector, Serial # BJ-14809, and a Magnavox stereo, Serial # 3059338, had been stolen on January 13, 1967 from designated premises located, respectively, in Hillside and Beltsville, Maryland. In his application, Detective Kulle asserted that the "grounds for the search and the basis of probable cause" were contained in his accompanying affidavit, as well as the appended affidavits of Detectives Ross and Farran, also of the Prince George's County Police Department.

In his affidavit Detective Kulle stated that he placed himself in a position to observe the Branch Avenue coffee shop in Silver Hill, Maryland, a shop which he knew to be operated by John Scott, an individual who had previously been convicted of receiving stolen goods. Kulle's affidavit recited the following observations personally made by him:

*January 18, 1967*

At approximately noon, Dominic Emelio and Brian Dunleavy drove up to Scott's shop in a red and white Pontiac and carried into the shop what appeared to be a color television set which he, the affiant, believed had been reported stolen that day from a Langley Park address; that at 4:10 p.m. a red Volkswagen operated by Thomas Beavers, a convicted housebreaker, arrived at the rear of Scott's shop; that Scott and

Beavers carried a portable television, a suitcase, and an item under a red and white bedspread from the Volkswagen into the rear of the shop, after which Beavers drove off; that at 5:30 p.m. Scott and another man loaded these same items into a 1967 Ford pick-up truck, known to be registered to Scott's wife Betty; that this vehicle, operated by still another man, then drove off to the residence of Charles Bishop at 5376 Auth Road, Camp Springs, Maryland, Bishop being an individual believed by the affiant to have been previously involved with Scott in receiving stolen goods; and that the vehicle was kept "under observation" until 6:30 p.m. that day and thereafter was followed by the affiant to appellants' home.

*January 19, 1967*

In the afternoon the red Volkswagen operated by Beavers arrived at the rear of Scott's shop; that items were removed therefrom by Scott and Beavers, "under a yellow bedspread" and "in a green pillow case" and taken into the shop, after which Beavers drove off; that later that afternoon a green 1966 Chevrolet, operated by a man, drove to the rear of Scott's shop and the operator carried a white portable television into the shop; that later the same day, a green 1959 Chevrolet arrived at Scott's shop and another portable television was carried into the shop; that still later the same day, a 1957 Chrysler arrived at the rear of Scott's shop and three portable televisions were carried into the shop; that at 5:00 p.m. a 1961 Ford sedan, known to be registered to Betty Scott, and driven by a man, arrived at Scott's shop and the man loaded a portable television into the trunk of the 1961 Ford and several other items under bedspreads; that John Scott then drove the 1961 Ford to his residence, arriving there at 6:10 p.m., at which time Scott and the man with him unloaded the items from the 1961 Ford and placed them in the Ford pick-up truck, which was then parked on the street in front of Scott's home.

*January 20, 1967*

At 12:45 p.m. the Ford pick-up truck was driven to Scott's shop; that at 2:55 p.m. a 1967 Chevrolet operated by a man also came to Scott's shop, at which time Scott transferred six portable television sets and a black zipper bag from the Ford pick-up truck to the Chevrolet.

*January 23, 1967*

That at 10:25 a.m. a 1956 Oldsmobile operated by Roger Unger and Michael Errico, both known criminals, drove to Scott's shop, at which time Scott removed a portable television from the Oldsmobile and placed it on the Ford pick-up truck. ·

*January 24, 1967*

At 11:15 a.m. a 1957 Pontiac operated by Emelio and Dunleavy drove to Scott's shop and Emelio carried a portable television into the shop.

*January 25, 1967*

At 11:40 a.m. a 1962 Cadillac operated by John Mealy came to Scott's shop and Mealy carried an "item" into the shop; that at 12:10 p.m. a 1957 Pontiac occupied by Emelio, Dunleavy and John Hazel came to the shop and that a portable television was taken from this vehicle and placed in the rear of the Ford pick-up truck.

*January 26, 1967*

At 11:50 a.m. an International Carry-All van driven by George Creighton, a convicted housebreaker, drove to Scott's shop; that Scott looked into the van, a conversation ensued between the two men, and thereafter another man came out of the shop and drove off in the van.

Detective Ross's affidavit recited that on January 26, 1967 he arrested Dominic Emelio who confessed that he was responsible for thirty housebreakings in Prince George's County; that Emelio stated that he sold the stolen goods to John Scott, at Scott's

shop; and that he, Emelio, and Dunleavy stole a black portable RCA television on January 24 and sold it to Scott at his shop that same day, Scott knowing that the set was stolen. In his affidavit, Ross further stated that he verified the fact of such housebreakings and also stated that the transaction of January 24 between Scott and Emelio had been photographed. The photograph was appended to Ross's affidavit.

Detective Farran recited in his affidavit that on January 13, 1967 at 4:30 p.m. he was in the rear of Scott's coffee shop and saw Calvin Smith and Thomas Johnson, both convicted house-breakers, inside the shop with Scott; that he entered the shop and observed a Bell & Howell movie projector, Serial # BJ-14809, a Kodak camera, and one Magnavox stereo, Serial # 3059338; that Scott told him that he had purchased these items earlier that day; that he, Detective Farran, ascertained later that day that these items had been stolen and that on January 14, he returned to Scott's shop and found that these items were no longer there, Scott stating at that time that Johnson and Smith took the property away and that he, Scott, had not bought it from them.

The application for the search warrant concluded by request-ing issuance of a warrant to search the appellants' house and to particularly seize the aforementioned Bell & Howell movie pro-jector and the Magnavox stereo. As issued, the search war-rant authorized the search of appellants' home and the seizure of the Bell & Howell movie projector and the Magnavox stereo, and further directed the seizure of "all paraphenalia used in or incident to the operation or conduct of said criminal activi-ties" (receiving stolen goods), and also authorized seizure of "any evidence that pertains to said criminal activities."

Acting under authority of the search warrant, the police searched appellants' home on February 3, 1967. While they did not locate either the Bell & Howell movie projector or the Mag-navox stereo, they did seize a large number of other items of personal property found in the house, including 107 sticks of dynamite. The seized items were removed in two paddy wagons. At the time of the seizure, the officers had no specific infor-mation that any of the items seized had actually been stolen. A four-page inventory of the seized articles was made and they

were photographed at the police station. The police then checked their records and contacted persons whose homes had been burglarized. A number of persons so contacted came to the police station and identified articles seized from appellants' home as having been stolen from them. It was upon this basis that appellants were indicted for twelve separate offenses of receiving stolen goods, and one case of unlawful possession of dynamite. As heretofore indicated, appellants' motion to quash the search warrant and suppress the evidence was overruled and, at the trial, the items seized at the appellants' home were introduced in evidence against them over their objection.

Appellants contend that the search and seizure was unlawful since the warrant authorizing a search of their home was issued without probable cause to believe that any unlawful activity ever took place in their home, or that their home contained any items subject to seizure.

It is, of course, well settled that the presence or absence of probable cause to support the search warrant must be determined solely from the allegations of the application for the warrant. *Tucker v. State,* 244 Md. 488; *Henderson v. State,* 243 Md. 342; *Burrell v. State,* 207 Md. 278; *Scarborough v. State,* 3 Md. App. 208; *Clayton v. State,* 1 Md. App. 500. In other words, the court's determination of the existence of probable cause must be confined solely to the affidavit itself, and evidence outside the affidavit, no matter by whom produced or how, is not relevant to the inquiry of probable cause. *Smith v. State,* 191 Md. 329; *Sessoms v. State,* 3 Md. App. 293.

We observed in *Salmon v. State,* 2 Md. App. 513, that the Maryland search warrant statute, Maryland Code, Article 27, Section 551, provides for the issuance of search warrants on proper oath or affirmation where probable cause exists to believe that any misdemeanor or felony is being committed by any individual or upon any premises or that any property subject to seizure under the criminal laws of the State is situated or located on any such person or in any such premises. It is upon the existence of such probable cause, and upon no other basis, that the statute authorizes a search for specifically designated property unlawfully obtained, or held, or of evidence of the commission of the crime. As the search warrant is issued for

the basic purpose of making a search, the probable cause necessary to support its issuance requires a proper showing not only that a crime has been or is being committed, but also that the evidence of the crime is upon the person or within the place or thing to be searched. *Salmon v. State, supra,* at page 519. See also *Kist v. State,* 4 Md. App. 282; *Frey v. State,* 3 Md. App. 38.

In its constitutional sense, and as used in the Maryland search warrant statute, "probable cause" is less than certainty or demonstration but more than suspicion or possibility. *Henderson v. State, supra; Henson v. State,* 236 Md. 518. In determining whether probable cause exists, consideration may be given to the special significance which objects, happenings and individuals may have conveyed to the trained, experienced, and knowledgeable police officers who apply for the warrant. *Henson v. State, supra,* at page 521, and cases there cited. In this connection, it is settled that when a search is based upon a magistrate's, rather than a police officer's, determination of probable cause, the reviewing courts will accept evidence of a less judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant. *Aguilar v. Texas,* 378 U. S. 108; *Jones v. United States,* 362 U. S. 257. In other words, search warrants must be tested and interpreted by courts in a commonsense and realistic fashion, since a grudging or negative attitude by reviewing courts towards warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting; and although "in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Ventresca,* 380 U. S. 102, 108. To like effect, see *Tucker v. State, supra; Henderson v. State, supra; Scott v. State,* 1 Md. App. 481. But this does not mean that probable cause can be made out by affidavits which are purely conclusory, *United States v. Ventresca, supra,* at page 108, or which fail to show any of the underlying circumstances from which it was concluded that probable cause existed to believe, *inter alia,* that a crime was being committed on the premises to be searched, or

that the fruits or evidence of such crime were located upon such premises. *Frey v. State, supra.*

Tested by these standards, and re-emphasizing the principle that the presence or absence of probable cause to support the search warrant must be determined solely from the allegations of the application for the warrant, together with its accompanying affidavits, we turn now to the question of whether there was probable cause shown in the warrant to justify a search of the appellants' home.

There is not even an allegation in the application for the warrant, or in the affidavits appended thereto, that the officers, or anyone else, ever observed the Magnavox stereo or the Bell & Howell movie projector being taken in or out of appellants' home, nor is there any allegation that anyone had any information that these items were ever located or seen in appellants' home. The only statement concerning these items was contained in Detective Farran's affidavit wherein he stated that he observed such items in Scott's coffee shop on January 13, 1967, that he subsequently learned that they were stolen, but was unable to find them in Scott's shop when he returned the following day. There is nothing in Farran's affidavit connecting these items with appellants' home, or even with any vehicle seen leaving the coffee shop and going to appellants' home. That the allegations of the application for the search warrant may have been sufficient to show probable cause to believe that John Scott was receiving stolen goods at his coffee shop, does not of itself constitute probable cause to believe that such stolen goods were subsequently taken into the Scott home. Neither does the fact, standing alone, that Scott or his employee, on two occasions, drove vehicles registered to Mrs. Scott, and containing stolen articles, to the Scott home, establish probable cause that such goods were subsequently taken into the home. Indeed, in Detective Kulle's affidavit, there is not even a faint inkling that the contents of these vehicles were taken into the Scott home. As Kulle had personally observed these vehicles at the Scott home, the inference to be drawn from the absence of any allegation that the stolen articles were removed into the home is that they were not in fact taken into the Scott home. Compare *Rugendorf v. United States,* 376 U. S. 528, *Frey v. State, supra,* and *Sessoms*

*v. State, supra,* all cases involving a search warrant for a home where the application for the warrant detailed underlying circumstances demonstrating the existence of probable cause to believe that the items to be seized were located within the home.

In *Nathanson v. United States,* 290 U. S. 41, a warrant was issued upon the sworn allegation that the affiant suspected and believed that certain merchandise was in a specified dwelling. The court noted at page 46 that the affidavit "went upon a mere affirmation of suspicion and belief without any statement of adequate supporting facts." It held: (page 47)

> "Under the Fourth Amendment, an officer may not properly issue a warrant to search a private dwelling unless he can find probable cause therefor from facts and circumstances presented to him under oath or affirmation. Mere affirmance of belief or suspicion is not enough."

We think *Nathanson* is applicable to the facts of this case. At most, the application for the warrant contained a conclusory statement that the Magnavox stereo and the Bell & Howell movie projector, as well as other unspecified stolen articles were contained within the Scott home, without any adequate supporting facts whatsoever demonstrating the basis for such belief. That this is not sufficient is abundantly clear.

The State contends that while it is the general rule that property other than that for which a search is being made under the authority of a search warrant cannot be seized where it does not come within the description of the warrant *(Brooks v. State,* 235 Md. 23), an exception to that rule exists where officers lawfully on the premises discover other property which they have reasonable cause to believe has been stolen *(Anglin v. State,* 1 Md. App. 85). The flaw in the State's position is that the officers were unlawfully, not lawfully, conducting a search of appellants' home, the search warrant being invalid for reasons heretofore stated. Since the entry into the appellants' home was not authorized, and the search was not lawful, the fact that during the unlawful search the officers may have developed probable cause to believe that certain of the articles observed in the home were stolen does not authorize the admission thereof in

evidence against appellants at their trial. Compare *Harris v. United States,* 331 U. S. 145; *Crowe and Williston v. State,* 240 Md. 144; *Dailey v. State,* 234 Md. 325; *Beale v. State,* 230 Md. 182; *Dorsey and Gladden v. State,* 2 Md. App. 40.

We thus conclude that there were no sufficient allegations in the application for the search warrant, or in its accompanying affidavits, to show that the evidence of the crime sought to be seized was within the place to be searched. Accordingly, we hold that the lower court erred in overruling appellants' pre-trial motion to quash the search warrant and suppress the evidence, and in admitting the seized articles into evidence at the trial over appellants' objection.

In view of our finding, we need not consider the other contentions raised by the appellants.

*Judgments reversed; cases remanded for a new trial.*