# JOHN TUMMINELLO *v.* STATE OF MARYLAND

[No. 81, September Term, 1970.]

*Decided January 5, 1971.*

The cause was argued before ORTH, THOMPSON, and POWERS, JJ.

*Douglas N. Sharretts,* with whom was *Edward J. Birrane, Jr.,* on the brief, for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Robert C. Ozer* and *J. Thomas Caskey, Assistant State's Attorneys for Baltimore City,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

John Tumminello, the appellant, was convicted of false pretenses by the Criminal Court of Baltimore. He was

sentenced to a term of three years. On appeal his conviction was reversed by this Court, *Tumminello v. State*, 7 Md. App. 380, 256 A. 2d 342. He was retried in the Criminal Court of Baltimore, Judge David Ross presiding with a jury and upon reconviction was sentenced to a like term. On this appeal he raises questions as to: (1) sufficiency of the evidence; (2) the mental capacity of Robert A. Sewell to be a witness against him; (3) an amendment to the indictment; and (4) the admission of a stenographer's transcript interpreting a tape recording.

There was evidence showing that Robert A. Sewell was arrested in August of 1966 on a charge of assault with intent to murder; on December 9, 1966, Sewell was convicted and sentenced to a term of four years in the House of Correction. He engaged an attorney to handle his appeal who apparently sent John Tumminello, a professional bondsman, the appellant, to one Father Maloney to secure money to pay for the appeal bond. Tumminello told Father Maloney that he had been sent to collect $600. for which he would have the case against Sewell "fixed". On this assurance Father Maloney gave the appellant $600., $500. of which he had obtained from a joint account between himself and Sewell; the other $100. was his personal funds. Afterwards, while visiting Sewell in the House of Correction, Tumminello told Sewell that on the following Monday he would be brought into court and placed on probation but it would cost $1,000. to "spring" him.

Previously, through the efforts of Sewell's counsel and the Father, Judge James K. Cullen had agreed to conduct a hearing on the Monday in question to determine whether the sentence should be stricken and Sewell placed on probation. After the hearing was completed he was placed on probation, although the judge was not aware of any of Tumminello's activities. After Sewell was released, he went to the appellant's office where the appellant informed him that additional monies were needed. Sewell said that at this time he requested the appellant to advise him as to how much he had been paid and that he

listed an amount in excess of $2,000.[1] and told him that he would hold the receipt on his desk until more money was paid. The appellant then took Sewell to Father Maloney's home and while the appellant waited, Father Maloney and Sewell went to the bank and withdrew $300. of which Sewell gave the appellant $290. Tumminello continued to demand money from Sewell who complained to the State's Attorney. On May 23, 1967, the State's Attorney, under Md. Code, Art. 27, § 125 (a) obtained an order from Judge J. Gilbert Prendergast to use an electronic device to overhear and record a conversation between Sewell and Tumminello. The order was based upon an affidavit by Sewell. At the same time an arrest warrant and search and seizure warrant were also issued.

At the direction of the State's Attorney, Sewell then arranged to meet Tumminello in his office for the purpose of paying him additional money. Sewell was supplied with $150. marked money which he took to Tumminello's office, with a hidden microphone which was to transmit the conversation to a recording device set up in an automobile near the office. Sewell entered the office, paid $100. of the money to Tumminello and had a conversation, the recording of which was partially garbled. When Sewell left the premises, the police entered, arrested Tumminello and recovered the $100. The portion of the conversation which was recorded concerned Sewell's claim that his attorney was demanding more money, and was threatening to have the suspension of his sentence revoked if he was not paid; and Tumminello's lengthy advice that Sewell did not owe his lawyer any more money as he, Tumminello, was responsible for the change of sentence. A stenographer's transcript of the clear portion of the tape was admitted in evidence.

Tumminello did not testify at the second trial. Additional facts will be stated as various contentions are discussed.

---

1. On cross-examination, Sewell explained the remainder of the monies paid had been obtained by Tumminello from a lock box which was in the custody of some of his relatives.

## I Sufficiency of the Evidence

Sewell testified that he was convinced Tumminello had "fixed the case" because the suspension of sentence occurred at the exact time and exact manner Tumminello had previously predicted and that he, Sewell, paid him the funds because he thought it was necessary for the appellant to obtain funds with which to bribe the judge and State's Attorney, as appellant had represented to him. The trial judge and the State's Attorney both testified, denying receipt of any money or any knowledge of the appellant's activities.

In *Lockard v. State*, 3 Md. App. 580, 583, 240 A. 2d 312, we quoted the requirements set out in *Smith v. State*, 237 Md. 573, 207 A. 2d 493, 495 to establish the crime of obtaining money by false pretenses as follows:

> " '(1) false representation of a past or existing fact; (2) made with intent to defraud; and (3) that the victim actually relied on the false representations to her loss.' "

Clearly, the evidence recited sufficiently supports a guilty verdict under the aforegoing definition of the law.

Appellant contends the evidence was insufficient to support his conviction by reason of the rule set out in *Kucharczyk v. State*, 235 Md. 334, 201 A. 2d 683 wherein the Court of Appeals held that when a witness stated on direct examination that a crime occurred and on cross-examination that no crime occurred, his testimony was too inconsistent to support a verdict of guilt. He points to Father Maloney's testimony at the prior trial that the money given to Tumminello was for bail as inconsistent with the testimony in the present trial that the money was for a "fix." An analysis of the testimony shows that the testimony is not as inconsistent as represented. Although some unimportant details of Father Maloney's testimony were inconsistently recited, his testimony as to the important matters was clear. The record shows that appellant stated on the telephone that he wanted $500. from Father Maloney for the bail but when he ar-

rived at the house to collect the money, he demanded $600., stating it was to "fix" the case.

This difference as to which conversation was referred to accounts for the apparent discrepancy. Appellant also contends that this testimony made Father Maloney an accomplice, whose testimony must be corroborated. Assuming, without deciding, that this is true, there was ample evidence to corroborate the testimony in Sewell's testimony and in the tapes.

Appellant further contends that since the money furnished by the State's Attorney was not lost, the victim did not rely on a false representation to his loss. This argument entirely overlooks the other sums paid, especially the $290. paid by Sewell to Tumminello at Father Maloney's home after Sewell had been released on probation.

## II Incompetency of the Witness Sewell

At the second Tumminello trial, the witness Sewell was found mentally incompetent to testify. The trial court held Sewell's insanity made him sufficiently unavailable for the present trial so as to allow the testimony from the prior trial to be admitted. In his appeal, appellant makes two concessions and raises two contentions. He concedes that: (1) Sewell was in fact incompetent at the second trial, (2) under *Contee v. State,* 229 Md. 486, 184 A. 2d 823, proof of the insanity of a witness is proof of sufficient unavailability to admit his testimony from a prior trial. See also *Britton v. State,* 10 Md. App. 70, 267 A. 2d 747 as to proof of unavailability in general.

Appellant's two contentions concerning Sewell's incompetency are: (1) Since Sewell's insanity is not permanent, and since possibility of recovery exists, the witness Sewell, although insane at the time of the second trial, would have been cured (and thus available) within a short time; therefore, it was error to admit his testimony from the prior trial. (2) Sewell was also incompetent at the time of the first trial; therefore, his testimony from

the first trial should not have been admitted at the second trial.

To support his first argument on Sewell's incompetency, appellant cites *Lindsay v. State*, 2 Md. App. 330, 234 A. 2d 479 holding that a witness being out of state until one or two days after the trial occurred was not sufficient unavailability to admit the testimony of the witness from a prior trial. The principles applied in *Lindsay* have no application to the facts of the present case since Sewell's recovery, if any, was vague, indefinite, and uncertain. The only specific testimony on Sewell's cure was as follows:

> "THE COURT: Do you have any expectations that further treatment will result of curing him to a point where he will be able to at some future date testify in his own defense in the charges pending against him?
>
> "THE WITNESS [Dr. Adamo]: Well, we are trying. He is being treated the best we can but I must say that this paranoid type of schizophrenia is very difficult to treat. These beliefs which are based on a false reasoning are very difficult to change and modify. So, the only thing I can answer, we keep on trying in the hope that he will improve."

The vagueness of this testimony readily demonstrates the difference between the cure of this mentally ill witness as opposed to the return of a witness to this jurisdiction in a few days.

Appellant more strenuously urges the testimony showed the witness was incompetent to testify at the time of the preceding trial, March, 1968; therefore, the transcript of his testimony at that trial should not have been admitted in the instant trial. The only witness offered to the trial court in the instant trial on the competency of Sewell at the first trial was Dr. Ido Adamo, a psychiatrist at Clifton T. Perkins State Hospital. The gist of Adamo's testimony can be summarized by the following quotes:

"Q. [by defense counsel] Now, my question of necessity has to follow: Assuming the hypothetical question that my brother, Mr. Ozer recited concerning the facts in this present case today as applied to May, 1967, would you in your opinion be able to say whether or not in May of 1967, when he gave an affidavit to the State and the next month —

"MR. OZER [Assistant State's Attorney]: March of '68 was the trial.

"Q. (Continuing) — and the subsequent trial in February and March of 1968, assuming those two appearances by Mr. Sewell under oath, I ask you now again, whether or not in May of 1967, when he gave an affidavit to the State and in March and February of '68 when he was a witness in a trial, whether Mr. Sewell had sufficient understanding to apprehend the obligation of an oath? That is the first question. Did he have sufficient understanding to apprehend the obligation of an oath? That's the first question".

\* \* \*

"A. I think I would answer the same way I answered that time. I would say yes.

"Q. The next question is, in May of 1967 and in February and March of 1968, on which occasions he made statements under oath, did he in your opinion, did Mr. Sewell have the capacity and was he capable of giving a correct account of the matters which he had seen or heard in reference to those things which were the subject of an affidavit in May of 1967 and were the subject of a trial in which he was a witness in March of '68?"

\* \* \*

"THE COURT: Can you give an opinion in response to that question with a reasonable degree of medical certainty based on the exami-

nations which you have made of the patient and reports in the file, Doctor?

"THE WITNESS: Well, I can only say that there is no question about the fact that he has been mentally ill for many years and that he was suffering from a mental disease and defect in 1966, '67 and '68 and '69, but I have some difficulty in determining with certainty the intensity of the disease and the facts during each time I have been asked. You know, these conditions go up and down. Sometimes the patients are fairly reasonable, fairly in contact but there are some other times that they are just — the reality testing is just too much impaired. So, the occasions I have had do not allow me to answer with precision the question.

"BY MR. SHARRETTS:

"Q. Well, could I then —

"A. As I said, there's no question in my mind, I think in nobody else's mind that he has been mentally sick for many years.

"THE COURT: But am I interpreting what you're saying correctly in that even though he has been suffering from these diseases that you have described over a long period of time, without examining the patient, you cannot determine at any given point in time during that period whether or not he can give a reasonably accurate account of events?

"THE WITNESS: No, I cannot be precise in that." [2]

Obviously, this testimony fails to overcome the presumption that the witness was sane at the time he testified. See 2 Wigmore, *Evidence,* §§ 484, 497 (3d Edition) ; 1 Wharton, *Criminal Evidence,* § 119 (12th Edition) ; 3 Jones, *On Evidence,* § 760 (5th Edition). The following cases

---

2. Other testimony showed that the witness was making use of medical records as well as his personal examinations in making his conclusions.

have applied the presumption: *Terry v. O'Neal,* 194 Md. 680, 72 A. 2d 26; *Johnston v. Frederick,* 140 Md. 272, 117 A. 768; and *Rasnick v. State,* 7 Md. App. 564, 256 A. 2d 543. The proof of insanity must be clear and conclusive. *Johnston v. Frederick, supra, Terry v. O'Neal, supra.*

We cannot say the trial judge in the instant case abused his discretion in receiving the testimony.

### III   Amendment of the Indictment

Immediately prior to trial, the Assistant State's Attorney indicated he might proceed without Sewell's testimony and requested the court to amend the indictment as to the amount of false pretenses from $2300. to $700. Over objection, the court granted the amendment. On appeal, appellant, while acknowledging the failure of the State to prove the exact amount stated in the indictment, would not be of any legal importance, alleges he was deprived of a valuable impeachment tool.

In *Watkins v. State,* 4 Md. App. 47, 50, 240 A. 2d 787, this Court discussed Md. Rule 714a which authorizes the trial court to permit an amendment of indictment any time before a verdict as to a matter of form, but not as to a matter of substance, quoting the rule laid down in *Corbin v. State,* 237 Md. 486, 489, 206 A. 2d 809, 811 as follows:

> "As to what constitutes substance and what is merely formal in an indictment, it may be said that all facts which must be proved to make the act complained of a crime are matters of substance, and that all else — including the order of arrangement and precise words, unless they alone will convey the proper meaning — is formal."

Since the amendment here was without legal significance, it is obviously within the discretion of the trial court to permit the amendment. The purpose of an indictment is to inform the accused of the charges, not to provide im-

peachment tools. Further, prior to argument to the jury, the trial judge offered to rescind the order granting permission for the amendment and to permit the case to be submitted to the jury on the basis of the $2300. figure but the offer was declined by the appellant's counsel. Although it seems that the alteration of the figure might have caused some minute interference with counsel's argument to the jury, we do not see how the figure in an indictment could be used to impeach a witness with any great effectiveness. We cannot say the trial judge abused his discretion in permitting the amendment of the indictment.

## IV  Admission of the Tape Recording

Appellant presents three reasons to support his contention that the evidence the State produced through the tape recording should not have been admitted.

First, he contends the record shows that at the time Sewell made the affidavit, he was incompetent to testify in these proceedings. The testimony of the psychiatrist quoted under II, *supra,* shows the incompetency at the time the affidavit was made (May, 1967) was not factually established; therefore, the argument falls, even assuming an incompetent witness could not under any conditions provide probable cause for a search warrant at a time when his testimony would not have been admitted at a trial. The State's Attorney testified that although the records concerning Sewell's prior mental illness were in his files at the time he made his application for the search warrant and presented the witness to Judge Prendergast, he was not personally aware of the information contained therein and that if he had been, he would have submitted the information to the trial judge prior to the issuance of the warrant. Thus we are not presented with the problem of a state official withholding information. In discussing this problem, the Court has not overlooked the fact that a search warrant's validity must be determined on the face of the affidavits submitted to procure it. *Scott v. State,* 4 Md. App. 482, 243 A. 2d 609, *Sessoms v. State,* 3 Md. App. 293, 239 A. 2d 118.

Secondly, appellant alleges the tapes were not connected to him because the trial judge ruled that the identification of the voices by an Assistant State's Attorney to the stenographer who transcribed the tapes was inadmissible to prove the persons speaking thereon. This argument completely overlooks the fact the taped conversation agrees with the testimony of Sewell as to that part of the conversation he had with the appellant. It can be said that the tapes proved themselves to be connected with the appellant with reasonable probability. *Veihmeyer v. State,* 3 Md. App. 702, 240 A. 2d 649. The contention also overlooks supporting testimony of the officers who placed the marked money on Sewell, observed him walk into the office with the appellant, listened to the broadcast portion of the conversation, and upon entering the office and searching the appellant found $100 of the marked money on his person.

Thirdly, the appellant contends the stenographer's typed transcript of the tape is inadmissible because portions of the tape were unintelligible, particularly the beginning and the end of the conversation. This question goes to the weight of the evidence rather than to its admissibility. It would hardly be contended that a nontrespassing eavesdropper hearing a portion of the conversation could not testify to what conversation he overheard because he did not hear the entire conversation between the parties. The tapes supported a vital part of Sewell's testimony as to what occurred when he was in the office. The fact that it was not as complete as might be desirable does not make it inadmissible. If evidence is relevant, its weight is a matter for the trier of the facts. *Bromwell v. State,* 8 Md. App. 382, 259 A. 2d 577.

*Judgment affirmed.*
*Appellant to pay costs.*