STATE OF IOWA, appellee, v. JACK EUGENE LAMPSON, appellant.

No. 52261.

(Reported in 149 N.W.2d 116)

MARCH 7, 1967.

REHEARING DENIED JUNE 5, 1967.

Whitesell Law Firm, of Iowa Falls, for appellant.

Lawrence F. Scalise, Attorney General, David A. Elderkin, Assistant Attorney General, and Allen M. Oppen, of Eldora, County Attorney, for appellee.

MASON, J.—Defendant, Jack Eugene Lampson, found guilty on his plea of guilty to breaking and entering as charged by county attorney's information, was sentenced by the Hardin County district court to the state penitentiary at Fort Madison for a term not to exceed ten years. Section 708.8, Code, 1966.

In his appeal defendant contends the trial court erred in overruling his motion to suppress evidence seized under a search warrant and that his plea of guilty was not voluntary but resulted from coercion and threat of additional punishment.

I. January 9, 1966, the proprietor of a food store in Union

discovered his place of business had been broken into and entered in the night apparently by forcing a door of the building. He ascertained that certain money, merchandise, some keys and an automatic pistol were missing.

January 11 the Des Moines police made an investigation of some activity at a motel on Fleur Drive in that city and discovered defendant and three others registered. The police had obtained a search warrant for the motel unit and recovered from the people there a certain amount of loose money and an automatic pistol which was subsequently identified by the proprietor of the food market. The police also had a search warrant for defendant's automobile and in the course of searching it found certain tools, pliers, pry bars and other instruments which they took and in due course forwarded to the FBI in Washington. The laboratory analysis indicated the marks on the door were made by the tools found in defendant's automobile.

January 13, as the result of a preliminary information filed in justice court of Hardin County, a warrant of arrest was issued for defendant. When taken before the magistrate on January 18, defendant requested a continuance in order to obtain counsel. Bond was set and the matter continued to January 22. On this date after a preliminary hearing at which defendant was represented by retained counsel, he was held to answer the charge and bound over to the district court. Appearance bond was fixed.

During his confinement in the county jail defendant was represented by three separate counsel, the first two appointed by the court and the third privately employed by defendant. This attorney also appeared for defendant in all district court proceedings.

II. Defendant was arraigned in district court February 11 and entered a plea of not guilty. He then filed a motion to suppress search warrant and a hearing was held February 21. At this hearing Officer Ray E. Steiner of the Des Moines police department testified he had submitted an information and application for search warrant to a judge of the Des Moines municipal court. He told of informing the court, while under oath,

how he obtained the information in regard to the application for the search warrant. This information had been given to the officer by an informant whose name he gave the court. Steiner advised the court the informant had been very reliable in the past and had been used on numerous occasions. The officer testified he personally had had dealings with the informant and the information received from him was reliable on at least four occasions. He testified, "We always come out with just exactly what the information was that was furnished by the informant."

The officer told the judge about defendant's car, the year, color and that the license plates had been removed. Steiner detailed the people's appearances, they were dirty looking, the woman had a black eye and one of the men had the appearance of having been in a fight. They had been seen at the motel around 5:30 a.m. The people had been heard counting a large amount of change in the room and there was some conversation about the money and whether all the people should stay in one room or split up. The motel involved did not have a reputation of catering to dirty, beat-up individuals. Steiner testified he regarded the circumstances as suspicious and so conveyed that impression to the judge.

The officer was not acquainted with the defendant's name at the time he applied for the search warrant and placed the name in the affidavit after he learned his name. The affidavit was presented to the judge before Steiner had ever seen defendant and he was advised by the judge to fill in the name.

On February 24 the court overruled defendant's motion to suppress.

III. The first error assigned is that the search warrants were obtained without probable cause and on the strength of Steiner's affidavit made without knowledge or information but based solely upon information furnished by an informant.

A similar proposition was urged and rejected in State v. Hall, 259 Iowa 147, 143 N.W.2d 318. At pages 152, 153 of 259 Iowa, page 321 of 143 N.W.2d, we quote this from United States v. Ventresca, 380 U. S. 102, 107, 108, 85 S. Ct. 741, 745, 746, 13 L. Ed.2d 684, 688, 689:

■ "While a warrant may issue only upon a finding of 'probable cause,' this Court has long held that 'the term "probable cause" * * * means less than evidence which would justify condemnation,' Locke v. United States, 7 Cranch 339, 348, 3 L. Ed. 364 [367], and that a finding of 'probable cause' may rest upon evidence which is not legally competent in a criminal trial. Draper v. United States, 358 U. S. 307, 311, 79 S. Ct. 329, 332, 3 L. Ed.2d 327 [331]. As the Court stated in Brinegar v. United States, 338 U. S. 160, 173, 69 S. Ct. 1302, 1309, 93 L. Ed. 1879 [1889], 'There is a large difference between the two things to be proved (guilt and probable cause), as well as between the tribunals which determine them, and therefore a like difference in the quanta and modes of proof required to establish them.' Thus hearsay may be the basis for issuance of the warrant 'so long as there (is) a substantial basis for crediting the hearsay.' Jones v. United States, supra, 362 U. S. [257], at 272, 80 S. Ct. [725], at 736 [4 L. Ed.2d 697 at 708, 78 A. L. R.2d 233]. And, in Aguilar we recognized that 'an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant,' so long as the magistrate is 'informed of some of the underlying circumstances' supporting the affiant's conclusions and his belief that any informant involved 'whose identity need not be disclosed * * * was "credible" or his information "reliable".' Aguilar v. State of Texas, supra, 378 U. S. [108], at 114, 84 S. Ct. [1509], at 1514 [12 L. Ed.2d 723, at 729].

"These decisions reflect the recognition that the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a common-sense and realistic fashion. They are normally drafted by non-lawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward

warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting."

Preceding the above quotation the Supreme Court made these statements we believe are also relevant, at pages 105–107 of 380 U. S., pages 744, 745 of 85 S. Ct.:

"We begin our analysis of this constitutional rule mindful of the fact that in this case a search was made pursuant to a search warrant. In discussing the Fourth Amendment policy against unnecessary invasions of privacy, we stated in Aguilar v. State of Texas, 378 U. S. 108, 84 S. Ct. 1509, 12 L. Ed.2d 723:

" 'An evaluation of the constitutionality of a search warrant should begin with the rule that "the informed and deliberate determinations of magistrates empowered to issue warrants * * * are to be preferred over the hurried action of officers * * * who may happen to make arrests." United States v. Lefkowitz, 285 U. S. 452, 464, 52 S. Ct. 420, 423, 76 L. Ed. 877. The reasons for this rule go to the foundations of the Fourth Amendment.' 378 U. S., at 110-111, 84 S. Ct., at 1512.

"In Jones v. United States, 362 U. S. 257, 270, 80 S. Ct. 725, 735, 4 L. Ed.2d 697, this Court, strongly supporting the preference to be accorded searches under a warrant, indicated that in a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall. In Johnson v. United States, 333 U. S. 10, 68 S. Ct. 367, 92 L. Ed. 436, and Chapman v. United States, 365 U. S. 610, 81 S. Ct. 776, 5 L. Ed. 2d 828, the Court, in condemning searches by officers who invaded premises without a warrant, plainly intimated that had the proper course of obtaining a warrant from a magistrate been followed and had the magistrate on the same evidence available to the police made a finding of probable cause, the search under the warrant would have been sustained. Mr. Justice Jackson stated for the Court in Johnson:

" 'The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often com-

petitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers.' Johnson v. United States, supra, 333 U. S., at 13-14, 68 S. Ct., at 369.

"The fact that exceptions to the requirement that searches and seizures be undertaken only after obtaining a warrant are limited underscores the preference accorded police action taken under a warrant as against searches and seizures without one."

" 'In dealing with probable cause, * * * as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' Brinegar v. United States, supra, 338 U. S., at page 175, 69 S. Ct., at page 1310. Probable cause exists where 'the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. Carroll v. United States, 267 U. S. 132, 162, 45 S. Ct. 280, 288." Draper v. United States, supra, 358 U. S. 307, at 313, 79 S. Ct. 329, at 333.

The probable cause mentioned in the Constitution and statute does not have to be shown in the information itself, but may be shown in an affidavit attached thereto, or by sworn testimony taken before the magistrate prior to the issuance of the warrant. State v. Doe, 227 Iowa 1215, 1221, 290 N.W. 518, 522; Krueger v. Municipal Court, 223 Iowa 1363, 1367, 275 N.W. 122, 125; Burtch v. Zeuch, 200 Iowa 49, 54, 202 N.W. 542, 544, 39 A. L. R. 1349.

As stated, the magistrate here examined Steiner under oath prior to issuing the warrant.

"* * * (W)here these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a

hypertechnical, rather than a commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants. Jones v. United States, supra, 362 U. S., at 270, 80 S. Ct., at 735. "* * *

"This Court is alert to invalidate unconstitutional searches and seizures whether with or without a warrant [citing cases]. By doing so, it vindicates individual liberties and strengthens the administration of justice by promoting respect for law and order. This Court is equally concerned to uphold the actions of law enforcement officers consistently following the proper constitutional course. This is no less important to the administration of justice than the invalidation of convictions because of disregard of individual rights or official overreaching. In our view the officers in this case did what the Constitution requires. They obtained a warrant from a judicial officer 'upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the * * * things to be seized.' It is vital that having done so their actions should be sustained under a system of justice responsive both to the needs of individual liberty and to the rights of the community." United States v. Ventresca, supra, 380 U. S., at 109–112, 85 S. Ct., at 746–748.

"In Ker v. California, 374 U. S. 23, 83 S. Ct. 1623, 10 L. Ed.2d 726, we held that the Fourth 'Amendment's proscriptions are enforced against the States through the Fourteenth Amendment,' and that 'the standard of reasonableness is the same under the Fourth and Fourteenth Amendments.' Id., 374 U. S. at 33, 83 S. Ct. at 1630. Although Ker involved a search without a warrant, that case must certainly be read as holding that the standard for obtaining a search warrant is likewise 'the same under the Fourth and Fourteenth Amendments.' " Aguilar v. State of Texas, supra, 378 U. S., at 110, 84 S. Ct., at 1512.

This assignment of error is without merit. The trial court was correct in overruling defendant's motion to suppress.

IV. Under his other assignment of error defendant

contends the fact of an unreasonable search and seizure must be added to the overall effect of the claimed undue influence and coercion. Having determined the search and seizure were valid, we consider his remaining contention of coercion and undue influence.

On March 8 defendant appeared in court with his attorney, withdrew his plea of not guilty entered February 11 and did himself personally enter a plea of guilty to the crime charged in the information. The court made this careful record of the March 8 proceedings:

"The Court: The last calendar entry in this case, Mr. Dunn, which is the first case assigned for trial this morning, shows that on the 11th of February, 1966, you appeared on behalf of Mr. Lampson; that he was personally present, and at that time a plea of 'Not Guilty' was entered to the charge, the Information filed in this case. Is there any further record you desire to make at this time? Mr. Dunn: Yes, sir. At this time, after discussions with Mr. Lampson, he has indicated to me he would like to change his plea.

"The Court: As I understand it under Iowa law, the only change in plea that is recognized, there being only two pleas in Iowa, is from 'Not Guilty' to 'Guilty.' Is that correct, Mr. Lampson? The Defendant: Yes.

"The Court: Counsel has informed you of the possibilities of punishment in this regard? The Defendant: Yes.

"The Court: You are aware of what that punishment may be? The Defendant: Yes.

"The Court: Very well. * * * Mr. Dunn: I would like to have the record show that Mr. Lampson has been advised of his Constitutional rights, including his plea freely and of his own accord.

"The Court: Do you concur in that statement, Mr. Lampson? The Defendant: Yes, sir.

"The Court: Very well. As concerns the matter of sentence, does Mr. Lampson waive time and ask that sentence may be pronounced at the convenience of the Court? Mr. Dunn: I so understand, Your Honor.

"The Court: Do you understand, Mr. Lampson, that you may have at least one day between the time of entering the plea and time of sentencing or such other time as the Court might fix, and do you waive that particular privilege in order that sentence might be pronounced subsequently today? (Pause in proceedings; defendant and Mr. Dunn confer sotto voce). (Defendant nods.)"

After a statement by the county attorney and before pronouncement of the sentence, the following examination by Mr. Dunn, defendant's attorney, was recorded:

"Q. Mr. Lampson, was there anything you wanted to say in regard to any of the other parties that were involved in this thing with you, especially Mrs. Stewart? A. I sold her the gun.

"Q. You what? A. I sold her this gun.

"The Court: The gun that she had in her possession? The Defendant: Yes, sir. The gun that she had in her possession, I sold it to her. I sold it to her on Interstate 80, and I sold it to her for $15.00.

"The Court: Now, was this the gun that you got from the holdup? The Defendant: Yes, sir.

"Q. (By Mr. Dunn) Was she with you at the time of the holdup? A. There was no holdup.

"Q. Or at the time of the breaking and entering? A. No; she wasn't.

"Q. Was she in the car? A. No.

"Q. How did she get involved in this thing? A. By having the gun. As far as this goes, I'm pleading for myself, but if you are interested in the other people, I am prepared to answer the questions; but for myself, I am just pleading for myself."

"The formal requisites for a plea of guilty in this State are set out at section 777.12, Code, 1966. In connection therewith this court has said in State v. Kellison, 232 Iowa 9, 14, 4 N.W.2d 239: 'In the first place, such a plea must be entirely voluntary, and not induced by fear, by misrepresentation, by persuasion, by the holding out of false hopes, nor made through inadvertence or by ignorance. 22 C. J. S. 653, section 423. And the court should satisfy itself of the voluntary character of the plea before accepting it, especially where accused is not represented by counsel and

is young and inexperienced or obviously lacking in intelligence or knowledge of our spoken language. 22 C. J. S. 653, section 423.'" State v. Kulish, 260 Iowa 138, 143, 148 N.W.2d 428, 432.

The basis for the assertion of coercion and undue influence is defendant's contention he was repeatedly told by the Hardin County deputy sheriff, the sheriff and his second and third attorneys that he would get 40 years under the habitual criminal statute if he insisted on pleading not guilty and standing trial; he was advised the county attorney was mad at him, threatening to charge him with being a habitual criminal, and he was denied an opportunity for a personal interview with the county attorney. Defendant contends his plea of guilty was in no way voluntary nor the product of his free will; there is an indication that two of the persons arrested with defendant relayed similar statements asserted to have been made by the deputy sheriff to defendant.

A similar contention was made in State v. Clark, 258 Iowa 254, 138 N.W.2d 120. There defendant contended the filing of a charge of being a habitual criminal constituted coercion which forced him to plead guilty to the particular charge. We held the contention to be without merit.

The possibility of such charge being filed against defendant here may have been a factor in his decision to plead guilty to the particular charge of breaking and entering and probably was a factor in his attorneys' advice to him. There was no coercion. See State v. Bastedo, 253 Iowa 103, 111 N.W.2d 255.

This assignment of error cannot be sustained.

In State v. LaMarr, 231 Ind. 500, 109 N.E.2d 457, cited in State v. Clark, supra, the court at pages 459, 460 stated as to a similar contention:

"When the law requires a plea of guilty to be entered freely and voluntarily it does not mean that an accused acts in the matter of his own free will. No doubt no accused wants to be charged with crime, nor would he like to enter a plea of guilty in any case. The law contemplates that he have an uncoerced election to plead not guilty or guilty, after he has had the benefit and advice of competent counsel. The fact that an accused may elect to plead guilty to a lesser offense when he is also

charged with a more serious offense does not make his plea coerced. Nor would the fact that the representative of the State indicated to him that he would be prosecuted under the more serious offense if he pleaded not guilty to the lesser offense, make the guilty plea void or voidable. There is nothing in this record from which the trial judge would have the right to draw the inference that the State was going to use improper or illegal means to attempt to obtain a conviction under either charge. Whatever fear the appellee entertained as to the possibility of his being convicted as a habitual criminal did not make his plea of guilty to voluntary manslaughter given under coercion or duress."

As previously stated, defendant was represented by retained counsel at all proceedings, has had court-appointed counsel to assist him in this appeal and has been furnished the necessary expenses for a record, printed briefs and arguments. The trial court was particular in protecting his constitutional rights, none were violated and defendant has no cause for complaint.

The cause is—Affirmed.

All JUSTICES concur.