**STATE of Iowa, Appellee,**

v.

**Gary Lee SPIER, Appellant.**

**No. 53464.**

Supreme Court of Iowa.

Jan. 13, 1970.

Nicholas V. Critelli, Jr., of Comito, Critelli, McNally & Roehrick, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Michael J. Laughlin, Asst. Atty. Gen., and Ray A. Fenton, County Atty., for appellee.

RAWLINGS, Justice.

Charged with possession of narcotics the defendant, prior to trial, moved to suppress evidence found in his automobile and seized pursuant to a search warrant.

In course of trial defendant made timely and repeated objections to introduction in evidence of material so obtained. This motion and these objections were on each occasion overruled. Trial jury returned a guilty verdict and defendant was thereupon sentenced. His motions for a new trial and in arrest of judgment were likewise overruled. He appeals. We reverse.

The sole issue here presented is whether trial court erred in overruling defendant's motion to suppress, and objections to evidence, predicated on absence of probable cause for issuance of the search warrant.

August 9, 1968, the warrant here involved was issued by Justice of the Peace Alvin Hoard, upon application made by State Narcotics Agent B. L. McGill.

The verified affidavit by McGill, in support of his application, stated: "R.L. (sic) McGill of said County, being duly sworn, says that certain personal property of narcotics in a motor vehicle, towit: belonging to Gary Spiers (sic), License No. 77–

112522 a 1967 Chev. of the value of motor vehicles a red 1967 Chev. in the Township of Des Moines in said County, on the 9th day of August, 1968, *and that this deponent suspects and verily believes and has cause to suspect and believe that one Gary Spiers (sic) has taken and stolen the same as aforesaid* and that said property, or a part thereof, is now concealed in a red 1967 Chev., Lic. No. 77–112522 situated in Des Moines Township, in said County." (Emphasis supplied).

August 12, 1968, defendant's car was located and searched. Resultantly some marijuana, cigarette papers and a small pipe were found and seized.

By motion to suppress the fruits of this search, defendant asserted issuance of the challenged warrant violated his rights under Amendment 14, United States Constitution, and Article I, Constitution of Iowa, as did any evidentiary use of the items seized in that no good or sufficient probable cause was shown upon which the warrant could lawfully issue.

In course of trial defendant repeatedly objected to introduction or use in evidence of the seized material upon the additional ground, issuance of the warrant, absent probable cause, contravened his rights under Amendment 4, United States Constitution.

At hearing upon the suppress motion officer McGill, as a witness for the State, on direct examination, was questioned and gave these answers: "Q. Describe to the Court what conversation took place between you and Al Hoard there? A. I advised Mr. Hoard that I had received information from Agent McCloskey that there was narcotics in the possession of Gary Lee Spier.

"Q. Do you recall whether or not you advised him what you based this upon? A. Yes. On information received from Agent McCloskey.

"Q. Do you know what that information was, that McCloskey had? A. Yes.

That Gary Spier had narcotics in his possession.

"Q. Do you know where that information came from? A. From a reliable informant.

"Q. Do you know who that reliable informant was? A. No, Sir.

"Q. Do you recall whether or not you advised Judge Hoard of this? A. No, I just advised Judge Hoard I had reliable information that narcotics were in the possession of Gary Spier."

Then on cross-examination McGill gave these responses to the questions asked of him: "Q. Agent McGill, at the time you went to secure this Search Warrant, did you inform Justice of the Peace, Al Hoard, of the nature of your information? A. I believe *all* that I advised Mr. Hoard was that I had information from a reliable source that narcotics were in the possession of Mr. Spier. (Emphasis supplied).

"Q. Did you state to him who this reliable source was? A. No, Sir.

"Q. Do you know who the informant was? A. No, Sir, I do not.

"Q. So at the time you did not know where the information came from? A. My information came from Agent McCloskey.

"Q. And you did not know where his information came from? A. No, Sir."

Mr. Hoard, testifying in chief for the State in the same proceedings, supplied these answers when interrogated: "Q. When Officer McGill appeared before you, what, if anything, transpired with respect to the issuance of this Search Warrant? A. I asked him what he was searching for, he said he was searching for narcotics.

"Q. Did he tell you the name of the individual? A. Yes.

"Q. What else did he tell you? A. That's all.

"Q. And based upon this, you issued a Search Warrant? A. I did. The Return of the Search Warrant is on the back.

"Q. So, in other words, the information you took from him that date, was just what he was searching for? A. On the Affidavit, yes.

"Q. And no other conversation of any consequence? A. No other conversation."

And this is Hoard's testimony on cross-examination: "Q. Now, this Affidavit, what was in that Affidavit? Do you remember? A. To search for narcotics.

"Q. And do you recall what grounds it was based upon, was there any conversation as to the reason for its issuance? A. There was reason to believe there was narcotics there.

"Q. He just said there was reason to believe? A. No, he said there was narcotics.

"Q. What was he basing his opinion on, do you know? A. I couldn't tell you that.

"Q. Do you recall whether or not he advised you, as to a reliable informant? A. No.

"Q. Did you find there was probable cause and reason to issue a Search Warrant? A. After he told me what he was searching for, I did, narcotics.

"Q. Did you have any other conversation with McGill? A. No."

Upon this record we must now determine whether Justice of the Peace Hoard, acting as a neutral and detached magistrate, had constitutionally adequate "probable cause" to issue the search warrant here in question.

■ I. Federal constitutional search and seizure standards are unquestionably applicable to the states.

This was made abundantly clear in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.

Ed.2d 1081. In that case the court said, loc. cit., 367 U.S. 655, 81 S.Ct. 1691: "We hold that all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court.

"Since the Fourth Amendment's right of privacy has been declared enforceable against the States through the Due Process Clause of the Fourteenth, it is enforceable against them by the same sanction of exclusion as is used against the Federal Government. Were it otherwise, then * * the assurance against unreasonable federal searches and seizures would be 'a form of words', valueless and undeserving of mention in a perpetual charter of inestimable human liberties, so too, without that rule the freedom from state invasions of privacy would be so ephemeral and so neatly severed from its conceptual nexus with the freedom from all brutish means of coercing evidence as not to merit this Court's high regard as a freedom 'implicit in "the concept of ordered liberty." ' " ·

So we must look to fundamental precepts in order to evaluate the always troublesome and recurring problem of probable cause for issuance of a search warrant.

■ II. On this review it is not for us to evaluate contradictory factual questions. It is essential, however, we make an independent examination of the facts, findings, and record in order to determine whether relevant constitutional standards have here been fully respected. See Ker v. State of California, 374 U.S. 23, 34, 83 S.Ct. 1623, 1630, 10 L.Ed.2d 726.

■ III. It is now well settled: "* * the informed and deliberate determinations of magistrates empowered to issue warrants * * * are to be preferred over the hurried action of officers and others who may happen to make arrests." United States v. Lefkowitz, 285 U.S. 452, 464, 52 S.Ct. 420, 423, 76 L.Ed. 877.

To like effect is this statement in Johnson v. United States, 333 U.S. 10, 13–14, 68

S.Ct. 367, 369, 92 L.Ed. 436: "The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime."

■ At the same time we should be mindful of the fact that affidavits for search warrants must be tested and interpreted by magistrates and courts in a common sense and realistic fashion lest police officers, who frequently draft them, be discouraged from submitting their evidence to a judicial officer before acting. United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684.

■ Balanced against these cautions is the holding in Aguilar v. State of Texas, 378 U.S. 108, 111, 84 S.Ct. 1509, 1512, 12 L.Ed.2d 723, that reviewing courts, though according substantial deference to a magistrate's determination of probable cause, have no choice but to insist that he perform his duty as a neutral and detached official—not serve merely as a rubber stamp for complaining police officers.

■ And of more than minimal significance is this footnote 1 comment in Aguilar, supra, loc. cit., 378 U.S. 109, 84 S.Ct. 1511: "It is elementary that in passing on the validity of a warrant, the reviewing court may consider *only* information brought to the magistrate's attention."

■ IV. Another basic concept here involved, as stated by this court in State v. Hagen, 258 Iowa 196, 205, 137 N.W.2d 895, is that: "A search is good or bad when it starts and does not change character from its success. The results obtained are not a factor to be considered in determining reasonableness of the search. United States v. Di Re, 332 U.S. 581, 595, 68 S.Ct. 222,

92 L.Ed. 210; Carlo v. United States, 2 Cir., 1961, 286 F.2d 841." That means, the vindicated anticipation of what may be revealed can not validate an otherwise illegal search. See also Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 1396, 22 L.Ed.2d 676; Fahy v. State of Connecticut, 375 U.S. 85, 91, 84 S.Ct. 229, 232, 11 L.Ed.2d 171; State v. Post, 255 Iowa 573, 581, 123 N.W.2d 11; and 79 C.J.S. Searches and Seizures § 51, page 809.

V. Amendment 4 of the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, *but upon probable cause*, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." (Emphasis supplied).

To the same effect is section 8, Article I, of the Iowa Constitution.

■ It therefore follows a search warrant may issue only upon an adequate showing, under oath or affirmation, of probable cause.

Touching on that subject the court said in Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879: "In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved."

This was later repeated, with approval, in Beck v. State of Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 226, 13 L.Ed.2d 142.

■ VI. Unquestionably a *warrant-issuing magistrate*, in determining the matter of probable cause, *must judge for himself the persuasiveness of facts relied on by an applicant*, mere conclusions being to-

tally inadequate. Giordenello v. United States, 357 U.S. 480, 486, 78 S.Ct. 1245, 1250, 2 L.Ed.2d 1503.

█ Thus, a magistrate is required to make an objective determination of the factual situation presented to him on oath or affirmation, mere subjective findings or conclusions of an applicant-officer being insufficient and of no probative value. See Beck v. Ohio, supra, at 379 U.S. 97, 85 S.Ct. 229.

█ VII. Of course, identity of an informant need not ordinarily be disclosed to a magistrate. See McCray v. State of Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed. 2d 62; Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697; Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639; and United States v. Pearce, (7 Cir.), 275 F.2d 318.

However, in Aguilar v. State of Texas, supra, the court established a two point probable cause standard as to an affidavit based upon informant supplied tips. In that regard it held, an affidavit might properly rest on hearsay information *so long as the magistrate is advised* as to sufficiently detailed underlying facts and circumstances both (1) from which the informant reached his conclusions, and (2) from which the affiant concluded the informant was reliable.

Subsequently some courts erroneously failed to accord full recognition to the second part of the foregoing standard by holding conclusory recitals of reliability were sufficient.

VIII. Then, January 27, 1969, came Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637, by which the Supreme Court endeavored to "explicate" Aguilar by insistence upon strict application of the standard therein prescribed. The affidavit in Spinelli, reproduced fully in an Appendix to the opinion, stated in essence: 1. The FBI had kept track of Spinelli's movements on five days during the month of August 1965. On four of these occasions, Spinelli was seen crossing one of two bridges leading from Illinois into St. Louis, Missouri, between 11 a. m. and 12:15 p. m. On four of the five days he was also seen parking his car in a lot used by residents of an apartment house in St. Louis, between 3:30 p. m. and 4:45 p. m. One day, Spinelli was followed further and seen to enter a particular apartment in the building. 2. An FBI check with the telephone company revealed this apartment contained two telephones listed under the name of Grace P. Hagen, carrying given numbers. 3. The application stated, "William Spinelli is known to this affiant and to federal law enforcement agents and local law enforcement agents as a bookmaker, an associate of bookmakers, a gambler, and an associate of gamblers." 4. Finally, it was stated, the FBI has been informed by a confidential reliable informant that William Spinelli is operating a handbook and accepting wagers and disseminating wagering information by means of the telephones which have been assigned specified numbers.

Holding this affidavit constitutionally inadequate the court said, loc. cit., 393 U.S. 415–416, 89 S.Ct. 588–589: "* * * Government claims that the informant's tip gives a suspicious color to the FBI's reports detailing Spinelli's innocent-seeming conduct and that, conversely, the FBI's surveillance corroborates the informant's tip, thereby entitling it to more weight. * * * *We believe, however, that the 'totality of circumstances' approach taken by the Court of Appeals paints with too broad a brush. Where, as here, the informer's tip is a necessary element in a finding of probable cause, its proper weight must be determined by a more precise analysis.* (Emphasis supplied).

"The informer's report must first be measured against Aguilar's standards so that its probative value can be assessed. If the tip is found inadequate under Aguilar, the other allegations which corroborate the information contained in the hearsay report should then be considered. At this

stage as well, however, the standards enunciated in Aguilar must inform the magistrate's decision. He must ask: Can it fairly be said that the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass Aguilar's tests without independent corroboration? Aguilar is relevant at this stage of the inquiry as well because the tests it establishes were designed to implement the long-standing principle that probable cause must be determined by a 'neutral and detached magistrate,' and not by 'the officer engaged in the often competitive enterprise of ferreting out crime.' Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948). *A magistrate cannot be said to have properly discharged his constitutional duty if he relies on an informer's tip which—even when partially corroborated —is not as reliable as one which passes Aguilar's requirements when standing alone.* (Emphasis supplied).

"Applying these principles to the present case, we first consider the weight to be given the informer's tip when it is considered apart from the rest of the affidavit. It is clear that a Commissioner could not credit it without abdicating his constitutional function. *Though the affiant swore that his confidant was 'reliable,' he offered the magistrate no reason in support of this conclusion. Perhaps even more important is the fact that Aguilar's other test has not been satisfied. The tip does not contain a sufficient statement of the underlying circumstances from which the informer concluded that Spinelli was running a bookmaking operation.* We are not told how the FBI's source received his information —it is not alleged that the informant personally observed Spinelli at work or that he had ever placed a bet with him. Moreover, if the informant came by the information indirectly, he did not explain why his sources were reliable. Compare Jaben v. United States, 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965). *In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail so that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation."* (Emphasis supplied).

And id., at 393 U.S. 418, 89 S.Ct. 590, is this summarizing statement: "We conclude, then, that in the present case the informant's tip—even when corroborated to the extent indicated—was not sufficient to provide the basis for a finding of probable cause."

Turning now to specifics in the case at bar, the record discloses McGill supplied neither facts nor underlying circumstances by which Hoard, acting as a neutral and detached magistrate, could even begin to objectively determine *for himself* how the unknown informant reached his conclusions, or from which McGill concluded the also to him unknown tipster was reliable. Hoard actually issued the challenged search warrant upon nothing more than a speculative, uncertain, and conjectural conclusion on the part of McGill.

Resultantly this court is now asked, by the State, to uphold validity of a search warrant issued upon the sole premise Hoard was advised by McGill that McCloskey had told McGill someone, unknown to McGill, told McCloskey the defendant had narcotics in his possession.

■ There is no escape from the conclusion, we have before us an affidavit which does not in any degree measure up to that rejected in Spinelli v. United States, supra.

It is also self-evident the reasoning of the court in striking down the affidavit in Spinelli applies with singular force in the case at bar.

In other words, the record here presented fails to disclose any informant support-

ive facts or underlying circumstances upon which magistrate Hoard could issue a valid search warrant.

We now hold the standards set forth in Aguilar v. State of Texas, and reiterated in Spinelli v. United States, both supra, were here totally absent or ignored.

Any other conclusion would, in effect, lead peace officers and magistrates alike to believe valid search warrants may issue upon nothing more than conclusory hearsay-on-hearsay tips. That would be totally false and deceptive.

IX. Approaching the problem before us from another angle, it is equally apparent an arrest of defendant Spier, and simultaneous search of his automobile *without benefit of a warrant*, would have been an arrest-search absent probable cause. As a consequence any items thereupon seized would, on proper timely objection, be inadmissible in evidence.

This is well demonstrated by Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142. There the officers, acting without a warrant, arrested and searched petitioner Beck. Motion to suppress testimony revealed *one officer stated he had received information and heard reports from someone with whom he was acquainted,* and petitioner had a record in connection with clearing house and schemes of chance. *But there was no testimony disclosing any factual basis upon which the court could determine credibility of any tip received,* and there was no showing the officers saw petitioner make a stop before he was arrested, nor anything else giving them reasonable cause to believe the petitioner had acted or was then acting unlawfully.

Holding fruits of the warrantless arrest-attendant-search were erroneously admitted in evidence, the Federal appellate tribunal stated at 379 U.S. 93–94, 85 S.Ct. 226–227: "The record is meager, consisting only of the testimony of one of the arresting officers, given at the hearing on the motion to suppress. As to the officer's own knowledge of the petitioner before the arrest, the record shows no more than that the officer 'had a police picture of him and knew what he looked like,' and that the officer knew that the petitioner had 'a record in connection with clearing house and scheme of chance.' Beyond that, the officer testified only that he had 'information' that he had 'heard reports,' that 'someone specifically did relate that information,' and that he 'knew who that person was.' There is nowhere in the record any indication of what 'information' or 'reports' the officer had received, or, beyond what has been set out above, from what source the 'information' and 'reports' had come. The officer testified that when he left the station house, 'I had in mind looking for [the petitioner] in the area of East 115th Street and Beulah, stopping him if I did see him make a stop in that area.' But the officer testified to nothing that would indicate that any informer had said that the petitioner · could be found at that time and place."

Continuing, the court said, loc. cit., 379 U.S. 97, 85 S.Ct. 229: "It is possible that an informer did in fact relate information to the police officer in this case which constituted probable cause for the petitioner's arrest. But when the constitutional validity of that arrest was challenged, it was incumbent upon the prosecution to show with considerably more specificity than was shown in this case what the informer actually said, and why the officer thought the information was credible. We may assume that the officers acted in good faith in arresting the petitioner. But 'good faith on the part of the arresting officers is not enough.' Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed. 2d 134. If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers, and effects,' only in the discretion of the police."

See also the "stop and frisk" opinions in Sibron v. State of New York, 392 U.S. 40, 88 S.Ct. 1889, 1912, 20 L.Ed.2d 917, and Terry v. State of Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L.Ed.2d 889. And see Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 220–222, 88 S.Ct. 1472, 1475–1476, 20 L. Ed.2d 538.

Demonstrably the State, in the case at bar, could not effectively assert admissibility of the evidence seized upon the basis it was incident to a valid arrest, or that the search was prompted by good and sufficient probable cause.

■ X. Briefly stated, the foregoing discloses that if the facts and underlying circumstances disclosed to a magistrate, "on oath or affirmation", are not sufficient to enable him to determine, in the exercise of his independent judgment, the existence of "reasonable or probable cause", a search warrant may not be validly issued. In other words, a magistrate, relying as he may on the truth of facts and underlying circumstances *so revealed*, must himself find there exists "reasonable or probable cause" for the issuance of a requested search warrant.

Pursuing the subject one more step this court said in State v. Lampson, 260 Iowa 806, 812, 149 N.W.2d 116: "The probable cause mentioned in the Constitution and statute does not have to be shown in the information itself, but may be shown in an affidavit attached thereto, or by sworn testimony taken before the magistrate prior to the issuance of the warrant. (Authorities cited)."

■ While reaffirming our stand in Lampson, supra, it is to us now apparent that when a magistrate issues a search warrant based wholly or in part upon sworn testimony presented to him, then, (1) the name and address of every person so testifying and an abstract of the testimony of each such witness shall be endorsed on the application, and (2) if the basis for issuance of the warrant is supplied wholly or in part by an informant,

the magistrate shall likewise endorse on the application only the identity of the peace officer to whom the information was given, with an abstract of the factual showing made, under oath or affirmation, upon which the magistrate determined reliability of the informant.

That, we believe, will fulfill the mandatory requirement set forth in Code section 751.4 as amended by chapter 306, Acts of the First Regular Session, Sixty-Third General Assembly, at the same time according requisite recognition to the principles enunciated in Spinelli v. United States and Aguilar v. Texas, both supra.

Moreover, this prescribed procedure will undoubtedly permit a more accurate and meaningful judicial review of the "probable cause" showing upon which a warrant issuing magistrate acted.

With regard to the foregoing see also United States ex rel. DeRosa v. LaVallee, (2 Cir.), 406 F.2d 807, 808; Sherrick v. Eyman, (9 Cir.), 389 F.2d 648; and State v. Cadigan, Me., 249 A.2d 750, 756–760.

XI. Finally, as declared in Spinelli v. United States, supra, at 393 U.S. 419, 89 S.Ct. 591: " * * * we cannot sustain this warrant without diluting important safeguards that assure that the judgment of a disinterested judicial officer will interpose itself between the police and the citizenry."

There is no alternative for us but to hold trial court erred to the prejudice of defendant in overruling his motion to suppress, and over proper timely objections, permitting introduction in evidence of the items seized as a result of the search of defendant's car, under a fatally defective search warrant.

Other authorities which lend additional support to that holding are Riggan v. Virginia, 384 U.S. 152, 86 S.Ct. 1378, 16 L. Ed.2d 431; Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436; Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159; Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed.

520; People v. Parker, 42 Ill.2d 42, 245 N. E.2d 487; State v. Cadigan, supra; Scott v. State, 4 Md.App. 482, 243 A.2d 609; 17 Baylor L.Rev. 440; 53 Calif.L.Rev. 840; 13 Drake L.Rev. 65; and 10 Wm. & Mary L.Rev. 1004. See also Annos. 10 A.L.R.3d 360.

This case must be and is reversed and remanded for further proceedings in accord with this opinion, and a new trial.

Reversed and remanded with instructions.

STUART, MASON, BECKER and Le-GRAND, JJ., concur.

LARSON, J., MOORE, C. J., and SNELL, J., dissent.

REES, J., takes no part.

LARSON, Justice (dissenting).

I cannot agree with the majority that here probable cause was not sufficiently shown for the issuance of a search warrant by the magistrate. It is my view that this record satisfactorily disclosed to the trial court that compliance with the law was substantially met as we have indicated in prior decisions, and that the magistrate substantially performed his duties as required by the state and federal constitutions. Unless we are to alter our past views and require the same quantity and quality of proof of guilt as in a full scale trial, I cannot see how we can do otherwise than uphold the decision of the learned trial court. I find no constitutional violations involved.

The pertinent provisions of Amendment 4 of the United States Constitution and Article I, Section 8, of the Constitution of Iowa, are identical and in part provide: "The right of the people to be secure * * against *unreasonable* seizures and searches shall not be violated, and no Warrants shall issue, but on probable cause, *supported* by Oath or affirmation, and particularly, describing the place to be searched, and the persons and things to be seized." (Emphasis supplied.) Unless there was no probable cause supported by oath or affirmation, which is not the case before us, and the search was unreasonable, which is not the case at bar, I would find no constitutional violation shown herein.

The duties of the magistrate and the information which is required in this jurisdiction are set forth in chapter 751, Code of Iowa, 1966. Section 751.4 prior to the Acts of the 63rd General Assembly provided: "Any credible resident of this state may make application for the issuance of a search warrant by filing before any magistrate, except a judge of the supreme court, a written information, *supported* by his oath or affirmation, and alleging thereon the existence of any ground or grounds specified in this chapter as ground for the issuance of a search warrant and that he believes and has substantial reason to believe that said ground or grounds exist in fact. Said information shall describe with reasonable certainty the person or premises, or both, to be searched, the property to be seized, and the person, if known, in possession of said premises and property." (Emphasis supplied.)

This warrant was issued August 9, 1968, and although we must decide this matter on the law as it then stood, we note an amendment to this section by chapter 306, Acts of the 63rd General Assembly, effective in June 1969, apparently for clarification of the magistrate's duties in connection with his procedure at the time of issuing the warrant. It provides: "If the magistrate thereafter issues the search warrant, he shall endorse on the application the name and address of all persons upon whose sworn testimony he relied to issue such warrant together with an abstract of such witness' testimony. However, if the grounds for issuance is supplied by an informant, the magistrate shall only identify the peace officer to whom the information was given and that he finds that such informant had previously given reliable information."

As is usual in such cases, much of the controversy involving the issue of search warrants by a magistrate revolves around what information under oath was submitted to the magistrate, and its sufficiency. Section 751.5 provides: "If the magistrate is satisfied from *his examination* of the applicant, and of the other witnesses, if any, *and* of the allegations of the information, of the existence of the grounds of the application, or that there is probable cause to believe their existence, he shall issue a search warrant, signed by him with his name of office, directed to any peace officer in the county, commanding him forthwith to search the person or place named for the property specified, and bring said property before him." (Emphasis supplied.)

In other words, the magistrate is required to perform his prescribed duties and issue a warrant when he is convinced from the application and the supporting information before him, as a man of reasonable caution, that a crime is being or has been committed.

From the record it appears at the hearing on the motion to suppress evidence that the magistrate testified he was informed by Narcotics Agent McGill that "there was reason to believe there was narcotics there (in the identified automobile)", that he could not recall whether he had also been advised by McGill as to his informant's reliability, but did recall that the suspect was named and the car to be searched was described, including its license number.

Officer McGill testified at the hearing that he had advised the magistrate that he had reliable information from Narcotics Agent McCloskey that there was narcotics in the possession of Gary Lee Spier, and that he did tell the magistrate that the information relayed to him was from a reliable source, but admitted he did not tell the magistrate what that source was.

Reviewing this testimony in the light most favorable to the trial court's determination, I am satisfied it did appear that the magistrate had substantially complied with the law in this jurisdiction, and had been furnished sufficient supporting information under oath to find probable cause for the issuance of the search warrant herein. I would, therefore, affirm the trial court's ruling thereon.

Numerous times in recent years this court has had occasion to pass upon the question of probable cause for the issuance of a search warrant, the latest being State v. Oliveri, Iowa, 156 N.W.2d 688, cert. denied 393 U.S. 1030, 89 S.Ct. 640, 21 L.Ed. 2d 573. See also State v. Lampson, 260 Iowa 806, 149 N.W.2d 116; State v. Hall, 259 Iowa 147, 143 N.W.2d 318. In Oliveri, we reviewed the applicable law to similar facts and stated at page 690 of 156 N.W. 2d: "Probable cause for the issuance of a search warrant exists where the facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable cause to believe that an offense has been or is being committed. (Citations)" We also said on page 692: " * * * when a magistrate has found probable cause, reviewing courts are slow to invalidate the warrant by interpreting an affidavit or other information under oath furnished the magistrate in a hypertechnical rather than a realistic and common-sense manner. Doubtful or marginal cases in this area should be largely determined by preference to be accorded warrants. Jones v. United States, supra, 362 U.S. at 270, 80 S.Ct. 725. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting. United States v. Ventresca, supra, 380 U.S. at 108, 85 S.Ct. 741."

Under the recent amendment to section 751.4, disputes as to what information and by whom presented to the magistrate will be hopefully eliminated, for it will now be necessary for the magistrate to reduce to writing a brief abstract of the testimony of the witness. This factual aid will help cure the problem of dimming memories and, in review proceedings, will present a

legal question as to the sufficiency of the grounds for the issuance of a warrant. In Oliveri, supra, we recognized this area of trouble and said on page 693 of 156 N.W. 2d: "Unfortunately, additional information given (in support of the application) by an officer under oath is usually not recorded and, after a lapse of time, memory often dims. When these circumstances are coupled with some confusion in the mind of a magistrate as to what the law considered adequate or 'official information' under oath sufficient to permit the issuance of a search warrant, we are not surprised at appellant's contention. As pointed out, we, as other courts, must indulge in the presumption that the magistrate did perform his functions as required by law, and in the absence of compelling evidence to the contrary, must conclude from the sworn affidavits and the testimony of the officers that probable cause existed and was properly communicated to the magistrate." That pronouncement is applicable here.

The majority does not consider or even mention any of our past decisions in this area of the law. Apparently it chose to ignore them and overlook the significance of the recent clarifying amendment to section 751.4. I have difficulty following generously-quoted excerpts from decisions from other jurisdictions and applying them to the facts before us. In citing from those cases the majority does not discuss the factual situations involved therein, nor the provisions of the applicable statutes. It is far from clear that those decisions were rendered under comparable statutory requirements and under similar factual disputes. For example, there is considerable discussion in the majority opinion as to what is mandated under Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L. Ed.2d 637, and Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, but nowhere does the majority attempt to review the factual matters presented or compare them with the past pronouncements of this court in State v. Lampson, supra, State v. Hall, supra, and State v. Oliveri, supra. Nevertheless, the majority states: "There

is no escape from the conclusion, we have before us an affidavit which does not in any degree measure up to that rejected in Spinelli v. United States, supra." It is, therefore, my belief that these cases are not applicable to the matter before us now.

On the other hand, it seems significant that in Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726, the court held that, although the standard of reasonableness for obtaining a search warrant is the same under the Fourth and Fourteenth Amendments of the United States Constitution, different jurisdictions are still permitted latitude in determining how these rights are guaranteed. See Gaston v. Texas, Tex.Cr.App., 440 S.W.2d 297, which dealt with the precise problem of a proper showing that must be made in the ex parte proceeding before the magistrate to justify the issuance of a search warrant, especially where the probable cause is based solely upon hearsay and independent corroboration. On page 302 of 440 S.W.2d the Texas court recognized a difference between their rule and the Iowa rule as to what must appear on the application for a search warrant, but does not criticize the Iowa rule where everything brought to the magistrate's attention need not be contained in the written application. In fact, our law would not permit us to require that all information relied upon in support of the application for a search warrant be placed in the affidavit and that no consideration be given oral information produced under oath to the magistrate. See section 751.5, Code 1966.

I feel we should not depart from the past pronouncements of this court, but should carry out the mandate of the constitution and comply with the spirit and the language of our statutes. I am certain, if the majority's view is adopted, it will go far in hampering effective law enforcement. It requires far too much be shown to obtain a search warrant, almost a showing beyond a reasonable doubt that a crime has been or is being committed. Obviously, this is beyond the constitutional or stat-

utory requirements heretofore recognized in Iowa.

I prefer a holding as to the sufficiency of a showing of probable cause in line with our past decisions, perhaps modified by the record requirements of the 63rd General Assembly. To reverse trial courts who have tried to follow those directives is wrong when not absolutely necessary. That is not the case here. Our position has encouraged police to use restraint in their actions when it reasonably appears a crime is being committed, and not disregard the desirable practice of seeking judicial approval. I think we will not aid in the protection of citizen liberty and freedom by making the procedure so complicated and difficult that few, if any, officers will resort to that manner of exercising the State's right of reasonable search and seizure.

MOORE, C. J., and SNELL, J., join in this dissent.