Larry Grant **BOWRING**, Petitioner,

v.

**J. D. COX**, Superintendent of Virginia State Penitentiary (now A. E. Slayton), Respondent.

Civ. A. No. 71–C–26–R.

United States District Court,
W. D. Virginia,
Roanoke Division.

Nov. 19, 1971.

Larry Grant Bowring, pro se.

Vann H. Lefcoe, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION

WIDENER, Chief Judge.

Larry Grant Bowring, a prisoner of the Commonwealth of Virginia, has filed a petition in forma pauperis requesting relief by way of habeas corpus, pursuant to the provisions of 28 U.S.C. § 2241.

On April 7, 1969, petitioner was convicted of abduction and sentenced to nine years' imprisonment following a jury trial in the Circuit Court of Roanoke County, Virginia. He now seeks relief from that conviction, contending that:

(1) His pre-trial bond was excessive.

(2) He was denied a fair and impartial jury on account of prejudicial pre-trial publicity.

(3) He was subjected to a prejudicial pre-trial police line-up.

The court has before it the entire state court record, a copy of Bowring's petition for writ of habeas corpus filed in the Circuit Court of Roanoke County, and a copy of his petition for writ of error.

■ Subsequent to his conviction, Bowring petitioned the Circuit Court of Roanoke County for a writ of habeas corpus raising the above three grounds. That court dismissed the writ on January 19, 1970, and on January 19, 1971, the Supreme Court of Virginia denied a writ of error to the judgment dismissing the petition. Petitioner has, thus, as to those grounds, exhausted his state remedies as required by 28 U.S.C. § 2254. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1962).

First, petitioner claims that his pretrial bond was excessive. The exact amount of the bond is somewhat difficult to discern from the petition. The record reflects that City of Roanoke authorities charged petitioner with several crimes, and County of Roanoke authorities charged him with the crime of abduction, about which he now complains. Petitioner alleges:

"Bond was set at fifty-thousand dollars ($50,000.00) in Police Court [presumably, for one of the city charges], shortly thereafter a warrant from Roanoke County was served to Petitioner and Bond was raised to one hundred-thousand dollars ($100,000). At 7:30 P.M. on March 20, 1968 Petitioner was subjected to a police line-up. Following the police line-up, Petitioner's Bond was again raise [sic] to one hundred and ninety-one thousand dollars ($191,000.00)." The following statement is also found in the petition: "Petitioner states that in the present case bail fixed at $100,000 is excessive for the crime charged, notwithstanding any other circumstances."

■ Whatever the exact amount of the bond, petitioner is not entitled to re-

lief. A federal court will only inquire into the matter if the state's setting of bail is arbitrary or discriminatory or results in the denial of counsel or the denial of a fair trial. Mastrian v. Hedman, 326 F.2d 708 (8th Cir. 1964), cert. den. 376 U.S. 965, 84 S.Ct. 1128, 11 L.Ed.2d 982 (1964); Wansley v. Wilkerson, 263 F.Supp. 54 (W.D.Va.1967); Corbett v. Patterson, 272 F.Supp. 602 (D.Col. 1967); Wilborn v. Peyton, 287 F.Supp. 787 (W.D.Va.1968); United States ex rel. Shakur v. Commissioner of Corrections (McGrath), 303 F.Supp. 303 (S.D. N.Y.1969); McCabe v. North Carolina, 314 F.Supp. 917 (M.D.N.C.1970). As the Eighth Circuit Court of Appeals has stated:

"A federal court would not be entitled to act in substitution of judgment for that of the state court. What the state court did would have to be beyond the range within which judgments could rationally differ in relation to the apparent elements of the situation. It would have to amount in its effect to legal arbitrariness in the administration of the bail right provided, so as to constitute a violation of due process, or to discriminatoriness in the application of the right as against petitioner, so as to constitute a violation of equal protection." Mastrian, supra, 326 F.2d at 711.

■ Bowring was charged with the heinous offense of abducting a ten year old boy, for which the maximum penalty was twenty years' confinement. Va. Code §§ 18.1–36, 18.1–37. This court is of the opinion that petitioner's bond was not "beyond the range within which judgments could rationally differ." Furthermore, Bowring does not allege that he was denied counsel or a fair trial or was prejudiced in any way on account of his bond.

■■ In any event, petitioner is not entitled to relief here on this account for the reason that his claim comes too late. Sheldon v. Nebraska, 401 F.2d 342 (8th Cir. 1968); Smith v. Warden, 280 F.Supp. 827 (D.Md.1968). He is now

being detained on account of his conviction, not on account of the allegedly excessive bond. Wilborn, *supra*; Taylor v. King, 272 F.Supp. 53 (N.D.W.Va.1967). In the interim period between the setting of bond and trial, Bowring had available to him means of contesting the amount of bond. Virginia provides an immediate appeal of allegedly excessive bond. Va.Code §§ 19.1–109—19.1–124 (1960 Repl.Vol.). Also, a federal court may grant habeas corpus relief prior to the state trial if the setting of bail is arbitrary or discriminatory in violation of constitutional requirements. *Mastrian, supra*; United States ex rel. Shakur, *supra*.

Petitioner's second claim is that he was a victim of pre-trial publicity. He alleges that prior to his trial, he was "subjected to a wide range of publicity, including, radio, television and newspaper coverage." In support of his motion for a change of venue in the state court, which motion was denied, petitioner maintained that five radio stations, three television stations, and two newspapers in the Roanoke area carried reports of the several criminal proceedings against him. He also states that a newspaper article pertaining to his attempt to escape from jail prior to his trial for abduction was accompanied by a picture of him. He attaches particular significance to his picture having been in the newspaper because his identification was at issue in the trial.

 It is true, of course, that a verdict of conviction must be based on evidence received in court, and not from outside sources. Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). But this court is of the opinion that this right of Bowring's was in no way abridged. The veniremen were carefully examined by the state judge, the Commonwealth's Attorney, and petitioner's attorney. On the voir dire examination, all the veniremen, with one exception, stated that they had neither read anything in the newspapers nor heard anything on television or radio pertaining to the case. One venireman indicated that he had read a newspaper article concerning the case several months prior to the trial. This prospective juror was individually examined and clearly indicated that he had formed no opinion about the case. Petitioner did not even exercise a peremptory challenge to strike this man from the jury panel. All the veniremen, including the one who had read the article, stated that they were not aware of any bias or prejudice toward petitioner and that they were not influenced in any way by any discussion of petitioner by the news media or by any other source. All of them unequivocally affirmed their willingness and ability to render a fair and impartial verdict in the case.

The jury which tried Bowring more than meets the constitutional standard as announced in Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961):

> "It is not required, however, that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communications, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Id.* at 722–723, 81 S.Ct. at 1642.

In the case at bar, the only juror who had heard anything about the case not only assured the trial court that he would render a fair and impartial verdict on the evidence presented, he also assured that court that he had formed no opinion about the case.

Examination of the entire record leaves only the inference that Bowring's trial was conducted in a detached, dignified atmosphere and that conditions surrounding the proceeding variously described in *Sheppard* as bedlam, a Roman holiday, and a carnival atmosphere, did not exist. See *Sheppard*, 384 U.S. p. 335, 356, and 358, 86 S.Ct. 1507. Under the circumstances prevailing at the trial of this case, there is no doubt whatsoever that Bowring received a fair trial. The record does not show that he was tried other than in an atmosphere of "serenity and calm." See Estes v. Texas, 381 U.S. 532, 536, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965).

■■■ Bowring seeks to bolster his argument by alleging in his response to respondent's motion to dismiss that he "will prove that the Jury incorrectly responded to the questions of the trial Court when they stated that they were not prejudiced by any newspaper or television publicity relating to your Petitioner." This claim, however, has at no time been presented to any of the state courts and therefore will not be considered by this court. Where a habeas corpus petitioner, proceeding in a federal court, seeks to impeach state criminal proceedings, the state courts must first have the opportunity to consider the matter. 28 U.S.C. § 2254.

■■■ Finally, petitioner seeks release on account of a pre-trial police line-up, which he contends violated rights guaranteed him by the Fourteenth Amendment and the Fifth Amendment. He asserts that it was constitutional error for the trial court to permit the identification resulting from the line-up to be introduced into evidence. The court finds no merit in petitioner's claim.

The record reveals that at approximately 8 p. m. on March 11, 1968, a young boy ten years of age was kidnapped and detained by force for three hours. Prior to the kidnapping, the boy had gone to a filling station to repair his bicycle. From the filling station, he observed petitioner walking up and down a nearby, lighted street. During the ensuing three hours, while he was being held by Bowring, the young victim observed petitioner's physique and, on several occasions, saw his face. The hostage also had the opportunity to become familiar with petitioner's voice, petitioner having spoken to him at some length.

Prior to the line-up, the police drove the victim to a suspect's home and pointed out the suspect, but the young victim indicated that this first suspect was not petitioner. The boy was also shown two groups of photographs. He stated that his kidnapper's picture was not in the first group, but he identified petitioner's picture in the second group.

Nine days after the kidnapping, on March 20, 1968, the police held a live line-up. An attorney was present. After listening to the men in the line-up respond to very simple questions and after visually observing them, the victim identified petitioner. The position of the men in the line-up was changed out of the presence of the victim. He viewed the line-up a second time and again identified petitioner. The young boy's identification was not prompted in any way, and he was positive in both identifications.

The line-up consisted of five white males, including petitioner. Petitioner was at that time twenty years of age, six feet one inch tall and weighed one hundred eighty pounds. The other men in the line-up ranged from twenty-one to twenty-five years in age. Their heights were five feet nine and one-half inches, five feet ten inches, six feet two inches and six feet two inches. Their weights were one hundred sixty pounds, one hundred sixty-seven pounds, one hundred eighty-five pounds, and one hundred ninety-eight pounds. At the time of the line-up, petitioner's hair was dyed blond. One of the other men had black hair, one had brown hair, one had "light" hair, and the record does not reveal the color of the remaining man's hair. All the men were dressed in jail uniforms.

Although this court does not currently have before it photographs of the line-up, it has previously had occasion to consider them. Petitioner was also identified at this same line-up by a robbery victim [1] and was subsequently convicted of robbery. Bowring sought habeas corpus relief here from that conviction. As a ground for relief, he asserted the unfairness of the line-up. But this court, in rejecting petitioner's contention stated:

> "[The pictures] do not disclose any outstanding dissimilarities between the petitioner and the other people in the line-up." Bowring v. Cox, 320 F. Supp. 688 at 689 (W.D.Va.1970).

Considering the totality of the circumstances, the identification of petitioner cannot be considered "so unnecessarily suggestive and conducive to irreparable misidentification" as to amount to a denial of due process. Stovall v. Denno, 388 U.S. 293 at 302, 87 S.Ct. 1967, 18 L. Ed.2d 1199 (1967). See also United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); Foster v. California, 394 U.S. 440, 88 S.Ct. 1127, 22 L.Ed.2d 402 (1969); Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed. 2d 387 (1970). The victim's ample opportunity to observe the totality of all identifying aspects of the person kidnapping him, the victim's opportunity to identify petitioner by visually observing him and by hearing him speak, the absence of any prompting of the victim, the presence of counsel, and the lack of disparity in the sizes and appearances of the persons in the line-up are among the factors which lead this court to conclude that the line-up was completely fair to the petitioner. Consequently, there was no constitutional error in the introduction into evidence of the out-of-court identification. In any event, it should be particularly noted that the victim made a positive in court identification of Bowring which the jury was entitled to accept at face value, and which, since untainted, was properly received.

Having examined petitioner's claims regarding his trial in the Circuit Court of Roanoke County, this court finds no basis for the issuance of the relief sought.

As the record contains a full development of all the factual matters necessary for the determination of Bowring's contentions, no further hearing is required. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

An order is this day entered dismissing the petition.

---

1. Actually, the robbery victim viewed· the line-up before and after the substitution of two of the men in the line-up. The substitution was made in response to the attorney's complaint about the participants' dissimilarity in appearance. The victim of the kidnapping, however, did not see the line-up prior to the change and made his identification solely from the reconstituted line-up. It should be further noted that Bowring's attorney, who requested the change, stated that the substitutes were "reasonably similar" in appearance to the petitioner, and that one of them very closely resembled the petitioner.