Ellis William **PLUMLEY**, Petitioner,

v.

Ira M. **COINER**, Warden, West Virginia
Penitentiary, Respondent.

**Civ. A. No. 3067.**

United States District Court,
S. D. West Virginia,
Huntington Division.

Aug. 9, 1973.

James E. Chambers, Huntington, W. Va., for petitioner.

Chauncey H. Browning, Jr., Atty. Gen., Richard E. Hardison, Asst. Atty. Gen., Charleston, W. Va., for respondent.

CHRISTIE, District Judge:

Petitioner, Ellis William Plumley, a prisoner of the state of West Virginia presently serving two 1–10 year consecutive sentences for breaking and entering, imposed by the Circuit Court of Lincoln County, West Virginia, is before this court on an application for a writ of habeas corpus filed in forma pauperis. Having exhausted his state court remedies, petitioner seeks relief in this court, under 28 U.S.C. § 2241 et seq., asserting numerous constitutional infirmities allegedly occurring during the proceedings culminating in his sentences and incarceration in the West Virginia penitentiary.

Counsel was appointed and an evidentiary hearing was held by this court on January 31, 1973. On the basis of the testimony adduced at said hearing, the pleadings and exhibits made a part of the record, the court makes the following findings and conclusions:

## FINDINGS OF FACT

In early 1972, petitioner was incarcerated in the Raleigh County jail on a state charge, a charge of grand larceny unrelated to the charges for which he is presently incarcerated. Acting on information received from other sources, Troopers B. R. Lester and Jerry De-Quasie, members of the West Virginia Department of Public Safety, visited petitioner in the Raleigh County jail to question him concerning instances of breaking and entering and grand larceny occurring in a number of counties in southern West Virginia. Petitioner was questioned by the troopers on the occasion at both the Raleigh County jail and at the Beckley State Police Office. Prior to the questioning, the troopers advised petitioner "of his rights" including his right to be represented by counsel, however, upon being so informed, petitioner waived his right to have counsel present. Although on this occasion petitioner did not sign any written statements, he did make oral statements to the troopers which were incriminating in nature. Subsequently, and at the request of petitioner, the troopers caused petitioner to be transported to the office of the prosecuting attorney of Lincoln County. Petitioner's motive for this request was apparently to get all pending charges against him "put in one county." This, at least, was his purpose as expressed to the troopers.

Upon being taken to the office of the prosecuting attorney, and after being informed of his constitutional right to remain silent, to an attorney, and to the appointment of counsel if he was pecuniarily unable to hire an attorney, and his intelligent waiver thereof, petitioner signed a confession admitting not only the charges for which he is presently incarcerated but also a number of other criminal activities in which he had been involved during the previous two years. Upon completion of the interview and after petitioner had signed the confession, warrants were obtained from a justice of the peace in Lincoln County before whom he was taken for a preliminary hearing. The petitioner thereupon was bound over to the grand jury.

Subsequently, in March 1972, petitioner was indicted by the Lincoln County

Grand Jury on two charges of felonious breaking and entering. On March 17, 1972, petitioner was taken before the Circuit Court of Lincoln County and, because an attorney was not then available for appointment, a later date was set for his reappearance before the court for appointment of counsel and for a bond hearing. Shortly thereafter an attorney was appointed to represent petitioner and bond was set at $30,000 on the two indictments ($15,000 on each). At that time, petitioner entered a plea of not guilty and trial was set for the March term of court.

During the March term, two individuals allegedly involved with the petitioner in the various criminal activities outlined by him in his confession were tried and convicted. Based upon the fact that the March term petit jurors had convicted these two defendants and being of the opinion that it would be in the best interests of petitioner, counsel for the petitioner moved the court for a continuance, which, apparently because of the large number of pending cases for the March term, the court granted, and the case was continued to the June term of court. Thereafter, the case was set for trial for July 27, 1972, and petitioner's counsel was given at least three weeks notice of the trial date. Although petitioner conferred with counsel on numerous occasions prior to trial, he failed to provide counsel with the names of any witnesses who might be able to offer an alibi or to testify in his defense until the morning of July 27, 1972, the morning the trial was scheduled to begin. At that time, petitioner gave counsel the telephone number of the two witnesses, both of whom were residents of Ohio. When counsel called the number provided him, there was no answer. Although petitioner's counsel, on the basis of these facts, did not move the court for a continuance, evidence in the record indicates that he did make a motion for a continuance for a period of twenty-four hours and that the court denied this motion. Also prior to the commencement of the trial, petitioner's counsel moved the court to suppress the signed confession on the basis that petitioner had been physically abused by the state troopers and that the confession was coerced, which motion, after a hearing thereon, was denied by the court.

Upon presentation of most, or perhaps all, of the State's evidence on the morning of July 27, 1972, a recess was taken until the next day. At that time, petitioner indicated to counsel that he wished to change his plea to guilty. Based upon plea bargaining which counsel had previously engaged in with the prosecuting attorney and upon discussions with the prosecuting attorney on the morning of July 28, petitioner agreed to enter guilty pleas to the indictment for which he was then on trial as well as to another indictment returned by the March term grand jury. In return, the prosecutor agreed that he would not seek indictments on the other pending charges against petitioner and that he would recommend to the prosecutors of the other counties where petitioner was alleged to have been engaged in illegal activities that they not prosecute. The prosecutor has complied with his part of the agreement reached as a result of such plea bargaining.

At the hearing before this court, petitioner testified that he changed his plea to guilty because he had been informed by two individuals who had been in the courtroom on the morning of July 27 that if he did not plead guilty a third party, unnamed, had threatened to shoot him. Based upon this threat and fear for his life, petitioner, according to his testimony, changed his plea to guilty. Neither the persons communicating this threat nor the person purportedly making it had any connection with the court, the prosecuting attorney's office, law enforcement officers or petitioner's counsel. Nor did petitioner inform his counsel, the prosecuting attorney or the court of the alleged threat or his supposed reasons for changing his plea.

Upon entry of the guilty pleas, petitioner was sentenced and thereafter in-

**1120**

carcerated at the State Penitentiary, Moundsville.

■ Petitioner raised a number of claimed constitutional errors allegedly committed during the criminal proceedings in the state court, some of which involve only questions of fact and some of which involve mixed questions of fact and law. With respect to the purely factual issues presented by the petitioner, and based upon this court's findings of fact, it is clear that petitioner has failed to establish the following contentions: (1) that he was denied the right to consult with counsel during the interrogation and preliminary hearing stages of the proceeding; (2) that at the time of his arrest and subsequent interrogation he was not advised of his right to remain silent, to have an attorney present and to have an attorney appointed if he was not financially able to retain an attorney; (3) that his oral statements and signed confession were not voluntarily made but were coerced after threats and physical abuse by law enforcement officers;[1] and (4) that he was not permitted to subpoena witnesses in his own defense at his trial. These assertions, raised by petitioner both in the pleadings and during the evidentiary hearing, are simply not supported by the evidence. The great weight of the evidence presented during the course of the evidentiary hearing in this court establishes that the facts were just contrary to those asserted by the petitioner, and this court, therefore, must find that petitioner has failed to carry his burden with respect to these specific allegations and that, insofar as these allegations are concerned, the relief sought by petitioner must be denied. The remaining allegations of constitutional error require somewhat greater elaboration.

## CONCLUSIONS OF LAW

*Right of accused to Speedy Trial*

■ The right to speedy trial, guaranteed by the Sixth Amendment to the Constitution, has been held to be "one of the most basic rights preserved by our Constitution" and as such a fundamental right, imposed by the Due Process Clause of the Fourteenth Amendment on the States. Klopfer v. North Carolina, 386 U.S. 213, 226, 87 S.Ct. 988, 18 L. Ed.2d 1 (1967). Petitioner asserts that the delay from the date of his arrest on February 8, 1972, to the date of his trial on July 27, 1972, constitutes a deprivation of his constitutional right to speedy trial and, accordingly, entitles him to have this court void the sentences imposed on his guilty pleas.

■ The decision of the Supreme Court in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), provides the most recent and most authoritative guidelines for the determination of the question of whether or not a defendant has been deprived of his right to speedy trial. The court, recognizing that the right to speedy trial "is a more vague concept than other procedural rights," sets forth a "balancing test" requiring speedy trial cases to be approached on an ad hoc basis. In making such an analysis of the individual facts of each case, the court states that the principal factors to be considered are the length of the delay, the reason for the delay, the defendant's assertion of his right to speedy trial, and prejudice to the defendant. In assessing the latter factor, consideration is to be given to the interests of the defendant which the right to speedy trial was designed to protect, that is: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the ac-

---

1. Although, factually, the record establishes that petitioner's statements were not the result of coercion, we note that under the ruling of the Supreme Court in McMann v. Richardson, 397 U.S. 759, 772, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970), "a plea of guilty in a state court is not subject to collateral attack in fed-

eral court on the ground that it was motivated by a coerced confession unless the defendant was incompetently advised by his attorney." The evidence does not establish such incompetency on the part of petitioner's counsel in this case, as later demonstrated (see pp. 1121–1122 infra).

cused; and (iii) to limit the possibility that the defense will be impaired." Considering the facts of the present case in the light of these guidelines, the court finds that petitioner has not been deprived of his constitutional right to speedy trial. Initially we note that the trial was held somewhat more than five months from the time of arrest and a little more than four months from indictment. While petitioner did inform his counsel that he desired a speedy trial, nevertherless, there is no evidence to suggest that he objected to the continuance granted on the motion of his counsel. This is not surprising inasmuch as counsel felt that the delay to another term would benefit the petitioner since two other defendants involved with petitioner had been convicted by a petit jury panel during the March term of court. Thus the petitioner not only failed to assert to the court his right to speedy trial, but he acquiesced in the request for a continuance made by his counsel for his benefit. Finally, we can perceive no prejudice to defendant resulting from the delay. With regard to the possibility that his defense was impaired, we note that defendant has not claimed that the delay resulted in a failure to procure witnesses for his defense. In fact, petitioner, for some inexplicable reason, delayed informing his counsel of any witnesses who could testify in his behalf until the day of his trial. Even at the time of the evidentiary hearing in this court, petitioner failed to clearly establish that there were any witnesses who could aid him in his defense against the two felony indictments. Certainly there is no evidence that the delay resulted in any impairment of his defense either as a consequence of fading memories, death of witnesses or unavailability of witnesses. While it might be argued in petitioner's behalf that the period of time prior to trial during which he was incarcerated worked some hardship on him, nevertheless, the Court is of the opinion that when all relevant factors are considered the evidence establishes that petitioner was not deprived of his right to speedy trial and, accordingly, denies him relief on that ground.

*Excessive Bail*

Petitioner next asserts that the $30,000 bail set by the Circuit Court with respect to the two felony indictments was in violation of the Eighth Amendment's requirement that "Excessive bail shall not be required . . . ." It should first be noted that habeas corpus relief with respect to excessive bail is available prior to trial and while the defendant is incarcerated awaiting trial. Mastrian v. Hedman, 326 F.2d 708 (8th Cir. 1964), cert. den. 376 U.S. 965, 84 S.Ct. 1128, 11 L.Ed.2d 982. A claim for relief on the basis of excessive bail asserted after conviction comes too late. Petitioner is now being detained, not as a consequence of allegedly excessive bail, but on account of his convictions. Bowring v. Cox, 334 F.Supp. 334, 336 (W.D.Va.1971); Smith v. Warden, Maryland House of Correction, 280 F. Supp. 827 (D.C.Md.1968); Spriggs v. North Carolina, 243 F.Supp. 57 (M.D. N.C.1965). The question of excessive bail, at this point in the proceeding, being a moot one, petitioner's demand for relief on this ground also must be denied.

*Inadequate Representation by Counsel*

Petitioner next asserts that his court-appointed attorney failed to adequately represent him and as a consequence he was deprived of the effective assistance of counsel guaranteed by the Sixth Amendment, as made applicable to the states by the Due Process Clause of the Fourteenth Amendment. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). In particular, petitioner complains that his attorney failed to subpoena witnesses to testify in his defense and failed to proffer the necessary motions to test the validity of the indictment and to secure a reduction in his bond. We note initially that petitioner's claim of a failure to secure attendance of witnesses for the defense is totally lacking in substance inasmuch as

the petitioner, as we have previously stated, failed to inform counsel of any witness who might be called until the day of the trial. Faced with this situation, counsel took the only action which then was available to him by trying to contact the witnesses at the phone numbers petitioner had given him. That counsel did not request a continuance is not surprising since he would not have been able to offer the court any satisfactory reason for waiting until the day of the trial to make the effort to subpoena the witnesses. Furthermore, according to petitioner's own testimony, counsel could not have truthfully asserted to the court that the two witnesses would have any relevant testimony to offer. Concerning counsel's supposed failure to move to reduce the bond of $30,000, testimony before the court indicates that, while counsel did not make a formal motion for bond reduction, he did informally raise the question with the judge of the court and, though not specifically so stated in the record, the inference is clearly drawn that the court could not be persuaded to reduce the bond. Thus, under such circumstances, fault may not be found in counsel for not doing what then appeared to be a useless act.

With regard to petitioner's claim that his attorney failed to offer any pretrial motions in his behalf, the record establishes that the attorney did, in fact, move to suppress the confession made by the petitioner and that, after hearing, this motion was denied. Petitioner complains that the validity of the indictments was not questioned, but there is no indication in the record that such an attack was warranted or would have been successful.

 Insofar as the record contains any indication of the performance of petitioner's counsel, it appears that he diligently and ably defended petitioner, con-ducting as vigorous a defense as the facts and circumstances and petitioner's cooperation permitted. In Snead v. Smyth, 273 F.2d 838, 842 (4th Cir. 1959), the court made the following observations with respect to the question of ineffective representation by counsel:

> " . . . It is generally held that mere mistakes or errors of counsel are not sufficient to establish a violation of the defendant's constitutional right. It is only in such extreme instances where the representation has been so inadequate as to make a farce of the trial that it can be said that the prisoner was deprived of his constitutional rights."

This rule has since been consistently adhered to in the Fourth Circuit. See Tompa v. Commonwealth of Virginia, 331 F.2d 552 (1964); Root v. Cunningham, 344 F.2d 1 (1965), cert. den. 382 U. S. 866, 86 S.Ct. 135, 15 L.Ed.2d 104 (1965); Kearney v. Peyton, 360 F.2d 589 (1966); Bennett v. State of Maryland, 425 F.2d 181 (1970).

Finding from the record before us that the representation afforded petitioner by his trial counsel in this case was quite adequate under the prevailing standard in this circuit and that he has not been deprived of his constitutional right to effective assistance of counsel, his claim for relief on this ground must be denied.

## CONCLUSION

Having reviewed all the evidence in this case, the Court is unable to perceive any instance in which petitioner, during the course of the proceedings in the state court, was deprived of any rights guaranteed him by the Constitution of the United States. Consequently, his petition for a writ of habeas corpus and this action will be dismissed.